22978.   MACON SAVINGS BANK *v.* GEOGHEGAN.

DECIDED OCTOBER 14, 1933.   REHEARING DENIED DECEMBER 1, 1933.

*Harris, Russell, Popper & Weaver,* for plaintiff in error.

*Jones, Johnston, Russell & Sparks, J. D. Carlisle,* contra.

SUTTON, J.   Brooks Geoghegan filed suit for damages against the Macon Savings Bank, making substantially these allegations: The defendant owns and operates a five-story office building in Macon, which is equipped with an elevator operated by the defendant for the use of its tenants.   On January 1, 1931, plaintiff's firm, a partnership, negotiated with the defendant for the purpose of leasing from it an office in said building.   At that time the defendant did not operate the elevator after seven o'clock p. m., and before the plaintiff's firm would lease offices in the

building the defendant was required to furnish some form of elevator service after that hour, as the plaintiff's firm did a large amount of night work. As a result thereof, it was agreed by the defendant that the members of the plaintiff's firm and the employees would have the right to operate the elevator themselves at any time during the night in going to and from their offices, and the lease was consummated. The plaintiff and members of his firm used the elevator at night until it became the common practice for other tenants in the building to use the elevator at night, it being the practice that if the elevator was not in place upon the ground floor of the building when one of the tenants of the defendant desired to use it at night, the tenant would ring, and the tenant who had carried the elevator to another floor would operate it down for the purpose of taking the other tenant up to his floor. This practice was well known to and acquiesced in by the defendant. It therefore became the duty of the defendant to furnish to the plaintiff elevator service which he and its other tenants could safely operate in going to and from their respective offices. The elevator-shaft on the ground floor is so constructed that it is visible on all sides, being enclosed in an iron grill which extends from the ground floor to the top of the building. This grill was painted black and was of the same general type and color as the grill work of the elevator. The elevator was painted black. Immediately facing the entrance to the shaft there is inserted a piece of Florentine glass having a height of about four feet. Between the lobby and the offices of the Vincent Realty Company is a window faced with grill work, and at one side of this window there is a large window opening on Cotton avenue. At night the street light throws the shadow of the grill work on this window on the Florentine glass, so as to give the glass the appearance of grill work similar to the grill work of the elevator-car. The metal around the shaft is solid for about three and a half feet from the floor, and the elevator is solid for about the same height. The elevator has a light that can not be turned on by anyone in the hallway, but has to be turned on by a switch inside the car. The elevator runs up and down on black grooves. At night when the car is on some other floor, in the dim light the grooves resemble the panels of the car. The door is metal grill work which has a spring latch, so that when the elevator rises the latch catches and

closes the entrance. When the elevator is on the fifth floor and the only light in the lobby below is that reflected from the Florentine glass, the appearance of the shaft is identical with what it would be if the elevator were in place. About 10:30 o'clock p. m. on November 20, 1931, plaintiff came to this building. Before entering it he looked up to the upper floors to see whether any of the offices were lighted, and saw no lights. He then entered the building, walked to the elevator-shaft, and attempted to turn on the light located there. The light had formerly been turned on by merely turning the bulb in the socket, but on this occasion plaintiff turned the bulb and the light would not come on. The light had been changed and a switch arrangement placed there, but plaintiff did not know of this that night. Plaintiff then faced the doorway to the shaft, and, due to the reflected lights and the dimness of the lobby, he thought he saw the elevator in place. He saw that the door from the lobby to the shaft was open to the extent of about six inches. Upon making such observation and believing that the elevator was in place, and not knowing that the grill work which he saw upon the Florentine glass was a reflection and that the supposed solid panels of the elevator were the elevator grooves, and not knowing that the spring latch on the elevator was not working, the plaintiff opened the door and stepped into the elevator for the purpose of turning on the light inside, and, the elevator not being there, he fell down the shaft to the basement, and was injured as alleged. Only a few moments prior to plaintiff's entrance into the building, another tenant in the building had operated the elevator from the first to the fifth floor. This tenant had attempted to close the sliding door to the shaft on the first floor by pushing it, just as he had done on previous occasions, but the door, though sliding to and making contact with the latch, failed to catch, on account of the defective condition of the latch, and a six-inch opening was left. Plaintiff, at the time of the above occurrence, was in the exercise of due care, and exercised that one of his faculties upon which he always relied, his eyesight. Plaintiff stopped and observed the situation, and in observing saw the elevator in place to the same extent and in the same manner as he would have seen it had it actually been in place on the ground floor. Plaintiff could not by the exercise of ordinary care have avoided the consequences to himself of the de-

fendant's negligence. The injuries to the plaintiff were the direct and proximate result of the negligence of the defendant in furnishing an elevator where it was possible to open the door of the shaft when the car was not in place; in failing to provide sufficient lights on the ground floor, and in failing to keep them burning all night; in failing to leave the light in the elevator turned on at all times; in permitting tenants to use the elevator when adequate lights were not furnished; in repairing the light on the ground floor by putting in a new switch without notice to the plaintiff and other tenants; in not keeping the light burning until all tenants knew of the change; in creating an optical illusion so that one in the exercise of ordinary care would think he saw the elevator, when it was not in place; in not painting the car and shaft in different colors; in permitting the elevator to be used with a defective catch on the door or defective latch; in not inspecting and repairing the same; in not supplying a signal or safety appliance to indicate whether the car was in place; and in not supplying a safety appliance to prevent tenants from entering the elevator-shaft unless the elevator was in place. The defendant demurred to the petition generally as not setting forth a cause of action. The court overruled the demurrer, and to this judgment the defendant excepted.

Conceding that the lock or latch on the elevator-shaft door was defective, and construing the petition most strongly against the pleader, we are forced to the conclusion that the plaintiff was familiar with the surroundings, having had offices in this building for several months; that he knew the location of the elevator-shaft, the manner in which it was constructed, and the material out of which it was made; that the plaintiff was familiar with the operation of the elevator, with the fact that it was the custom of other tenants to use the elevator after office hours, and with the fact that on this particular occasion some other tenant was liable to have moved the elevator from the ground floor; that the plaintiff entered the lobby, which was only dimly lighted from a street light, and approached the elevator-shaft, attempting to turn on a light that was outside in the lobby, which he failed to do, and, seeing the door to the elevator-shaft slightly open, thinking, by reason of an optical illusion, that the elevator was in place, opened the door for the purpose of entering the elevator which he sup-

posed was there, and was precipitated down the shaft to the basement and injured. Taking this view of the case, we think that the injuries to the plaintiff resulted from his own failure to exercise ordinary care, and that his own negligence, and not any alleged negligence on the part of the defendant, was the proximate cause of his injuries. The defendant was under no common-law or statutory duty to light the lobby in the building after office hours. When the plaintiff, a tenant, approached this elevator-shaft in a dark or dimly lighted lobby he should have proceeded cautiously, and when he found the elevator door ajar and open, although by reason of an optical illusion he thought the elevator was there, he should have felt with his foot cautiously to see if the elevator was there, or in some other manner ascertained whether it was really there, before proceeding to step into the open shaft. Where the entrance was dark, it would seem that ordinary care would condemn the act of a person, who knew the location of the elevator-shaft and that others might likely be using the elevator, in stepping into the elevator-shaft without satisfying himself that the elevator was in fact there. *Peniston* v. *Newnan Hospital*, 40 *Ga. App.* 367 (149 S. E. 715) ; Civil Code (1910), § 4426; *Avery* v. *Anderson*, 31 *Ga. App.* 402 (120 S. E. 683) ; Rice *v.* Goodspeed Real Estate Co., 254 Mich. 49 (235 N. W. 814) ; Murray *v.* Earl, 282 Pa. 517 (128 Atl. 436). See also *Ogain* v. *Imperial Café*, 25 *Ga. App.* 415 (103 S. E. 594); *Hendricks* v. *Jones*, 28 *Ga. App.* 335 (111 S. E. 81) ; *Castleberry* v. *Fox*, 29 *Ga. App.* 35 (113 S. E. 110) ; Kauffman *v.* Machin Shirt Co., 167 Cal. 406 (140 Pac. 15) ; Globe Indemnity Co. *v.* Hook, 46 Cal. App. 700 (189 Pac. 797) ; McInturff *v.* St. Louis Trust Co., 201 N. C. 16 (158 S. E. 547). This is not a case wherein at the time of the accident the elevator either actually or supposedly was in the charge of the defendant or its agents, nor is it a case where the partially open door to the elevator-shaft constituted an invitation to enter, as in the cases of *Helmly* v. *Savannah Office Building Co.*, 13 *Ga. App.* 498 (79 S. E. 364), and *Camp* v. *Curry-Arrington Co.*, 41 *Ga. App.* 53 (151 S. E. 837), and similar cases. The facts of this case are weaker than the facts of the *Peniston* case, supra, wherein it was held that a case was not alleged against the owner of the building. It follows that the court should have sustained the defendant's demurrer to the petition.

6

*Judgment reversed. Jenkins, P. J., concurs. Stephens, J., dissents.*