COLE *v.* KEELER BRASS CO.

1. LANDLORD AND TENANT — NEGLIGENCE — FURNITURE EXHIBITION
   BUILDING—ELEVATOR SERVICE—ORDINARY BUSINESS HOURS—DI-
   RECTED VERDICT.

   On appeal from directed verdict and judgment for defendant
   furniture exhibition building owner in action by plaintiff who
   fell down elevator shaft, agreement of lease to furnish use of
   elevator during ordinary business hours *held*, by virtue of
   custom, to include such service on Sunday morning to plaintiff
   furniture salesman accompanied by customers desirous of ex-
   amining a tenant's display therein.

2. SAME—USE OF ELEVATORS—SUNDAY.

   Furniture salesman, desirous of using elevator in furniture ex-
   hibition building on a Sunday morning to show a tenant's
   display to customers *held*, bound to know he had no greater
   right to use elevator than that given tenants by the lease, that
   defendant building owner did not operate the elevator on
   Sunday morning, and that other tenants might be using it at
   that time; consequently he was obliged to anticipate elevator
   might not be at ground floor.

3. SAME—ELEVATORS.

   Building owner who has no duty under leases to furnish elevator
   operators on Sunday mornings is not liable for any negligent
   condition caused by operation nor for structural defects unless
   it were known or had existed a sufficient time to charge owner
   with notice of it.

4. SAME—ELEVATORS—ILLUSIONS.

   Owner of furniture exhibition building, not being under any
   duty so to construct its building as to prevent careless persons
   from hurting themselves, *held*, not bound so to construct ele-
   vators as to prevent formation of illusions to would-be users
   that their doors are open when in fact closed, since while doors
   are closed there is no danger of falling into shaft and when
   open there is no illusion.

5. Same—Elevators—Partly Open Doors—Negligence.

Since a wholly or partly closed elevator door is not an invitation to enter elevator shaft without looking, defendant building owner would not be guilty of negligence in action by an invitee on the premises who found door partly open, opened it and stepped into shaft without looking.

6. Same — Elevators — Contributory Negligence—Illusions—Invitees.

Furniture salesman who, desirous of using elevator in defendant's furniture exhibition building, noticed that elevator seemed to be at his floor and after finding doors ajar about an inch, opened them without difficulty and, as he reached in to turn on the light, stepped into shaft and fell 20 feet *held*, guilty of contributory negligence as a matter of law.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted June 23, 1937. (Docket No. 81, Calendar No. 39,471.) Decided October 4, 1937.

Case by Russell C. Cole against Keeler Brass Company, a Michigan corporation, for personal injuries sustained by falling in an elevator shaft. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*John M. Dunham,* for plaintiff.

*Alexander, McCaslin & Cholette,* for defendant.

Fead, C. J. Plaintiff reviews directed verdict and judgment for defendant.

Defendant owns a furniture exhibition building in Grand Rapids, in which it rents space to manufacturers, among them the Kittinger Company. The leases provide:

"The said party of the first part agrees  *  *  * also to furnish the said party of the second part, the

joint use with other tenants of the freight elevator and the driveway in the rear of said building, and the use during ordinary business hours, of the passenger elevator in said building, and furnish the motive power for said elevators.''

The Kittinger Company is located on the fifth floor of the building.

Plaintiff was a salesman for the Barrett Furniture Company of Grandville, Michigan. He often took customers to the exhibition building and, where possible, made sales, the manufacturer billing the goods to plaintiff's employer and the latter to the customer.

During the regular furniture exhibition season defendant maintained elevator operators day and night. At other times it had operators during the daytime and sometimes in the evening. At other times elevator operators worked only part of the day. The service was dependent on the trade.

Some of the tenants had keys to the building so they could enter at any time. There was testimony that goods were shown to customers not only during the daytime on ordinary working days but often in the evening and sometimes on holidays and Sundays. The tenants who did not have keys sometimes went through stores on the ground floor and entered the exhibition portion of the building from that way. There was testimony that exhibitors or their salesmen operated the elevators when no attendant was on duty. The manager of the building knew that this was done during business hours but denied knowledge of the use of the elevator by tenants at other times except by prior arrangement.

Harry Duivekot, a janitor for one of the tenants, had had a key to the office of the building manager for many years. He used to go to the office and get

the elevator key to use the elevator. Sunday morning, October 20, 1935, Duivekot obtained the elevator key from the office, unlocked the elevator, and took it to the fifth floor.

On that morning plaintiff, having two prospective customers, Lester Brooker of Detroit and his intended bride, telephoned Madeline Smith, Grand Rapids manager of the Kittinger line, and arranged to examine its display of furniture. They met, went to the building and went through the store space occupied by the Postal Telegraph Company. They approached the north elevator. The elevator door was not locked nor completely closed but was ajar about an inch so that plaintiff inserted his finger at the side and swung it open without any difficulty, as he said he had done on many prior occasions. After doing so with his right hand he reached into the elevator with his left hand to turn on the light. As he did so, he stepped into the shaft, the elevator was not there and he fell 20 feet and was seriously hurt.

It was 11 o'clock in the morning. The corridor was well lighted. The floor of the corridor is composed of small tile of white, gray and green, set in diamond shape formations. The reflection of the light on the floor and the glass in the elevator door creates an illusion so that even if the elevator is not at the floor it seems to be. Miss Smith had the strong impression as they approached that the elevator was at the floor. Plaintiff and his two customers believed it was. In addition, plaintiff testified that the finger indicator, which shows the floor at which the elevator is, pointed to the ground floor, where they were. Plaintiff said that from all the appearances he was confident that the elevator was at the ground floor and that was the reason he did not look as he opened the door and stepped in to turn on the light.

He said that opening the door would destroy the illusion and if he had looked after the door was open he would have seen that the elevator was not there.

Counsel raise questions of whether Sunday morning constituted "ordinary business hours" within the meaning of the lease, and whether plaintiff, in attempting to use the elevator, was a trespasser, licensee or invitee. Plaintiff claims that, by long-continued custom, the obligation of the lease to furnish use of the elevator operated on Sunday morning and plaintiff was an invitee. While such issues are not free from doubt, we will accept plaintiff's contention that the custom was proved.

But plaintiff was not invited by defendant to enter the elevator in the manner he did, and he had no greater right to use the elevator than that given the tenants by the lease. He knew, or was bound to know, that defendant did not operate the elevator on Sunday morning and, under the custom upon which he relies, that the other tenants used it and might be using it at that time. Consequently he was obliged to anticipate that the elevator might not be at the ground floor and that another tenant might have moved it.

Having no duty to operate the elevator on Sunday morning, defendant would not be liable for any negligent condition caused by operation, nor, of course, would it be responsible for any structural defect, unless it were known or had existed a sufficient time to charge defendant with notice of it. These familiar principles dispose of all the minor claims of negligence, including the failure of the finger indicator to work properly, and leave as the sole actionable claim the illusion caused by the reflection of the corridor floor in the glass of the elevator door.

The books are full of cases involving accidents in unlighted or unguarded elevator shafts, but few have been found which concern the point of deceptive illusion.

In *Beal-Doyle Dry Goods Co.* v. *Carr*, 85 Ark. 479 (108 S. W. 1053, 14 Ann. Cas. 48), the light was dim; the elevator door was open; plaintiff was unacquainted with the premises; he looked inside the shaft and thought he saw the elevator floor; and his negligence was held a question of fact. Very similar and with the same ruling was *Aiken* v. *Sidney Steel Scraper Co.*, 197 Mo. App. 673 (198 S. W. 1139). These cases are readily distinguishable. The case most nearly analogous to the one at bar is *Macon Savings Bank* v. *Geoghegan*, 48 Ga. App. 1 (171 S. E. 853), where grill work in a window created an illusion that the elevator was at the floor; the elevator door was open six inches; the light was dim; plaintiff was acquainted with the premises; he knew that other tenants operated the elevator; and it was held that he could not recover because he entered the shaft without looking.

We think the case could turn on the want of negligence of defendant. Defendant was under no duty so to construct its building as to prevent careless persons from hurting themselves. Unless the illusion would have been likely to induce a reasonably careful person to open the door and enter the shaft without looking, defendant was not guilty of negligence. *Garret* v. *W. S. Butterfield Theaters, Inc.*, 261 Mich. 262.

The illusion continued only as long as the elevator door was closed. There was no danger then. When the door was opened the illusion vanished and the situation would become apparent to anyone who looked toward the elevator shaft. A wholly or

partly closed elevator door is not an invitation to enter the shaft without looking. On the contrary, it is a warning to investigate. *Grand Rapids Bedding Co.* v. *Grand Rapids Furniture Temple Co.,* 218 Mich. 486; *Rice* v. *Goodspeed Real Estate Co.,* 254 Mich. 49; *Blankertz* v. *Mack & Co.,* 263 Mich. 527; *Wheeler* v. *Hotel Stevens Co.,* 71 Wash. 142 (127 Pac. 840, Ann. Cas. 1914C, 576). It seems that reasonable minds could hardly doubt that a reasonably prudent person, on opening the door, would have looked and seen the danger. We are unable to find evidence of negligence of defendant.

In addition, plaintiff clearly was guilty of negligence. With knowledge that the defendant was not in charge, that other tenants might have moved the elevator, with warning of a suspicious condition because the elevator door was ajar, and having no invitation from defendant to throw him off his guard, it became his duty to use commensurate care. His failure to notice the destruction of the illusion on opening the door and to see the empty shaft, plainly visible if he had looked, can hardly be designated by a milder term than negligence.

Affirmed.

NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.