[No. 27339. *En Banc.* July 10, 1939.]

ESTELLE BENDER, *Respondent,* v. A. L. WHITE et al., *Defendants,* ETHELYN B. WHITE, *Appellant.*[1]

[1]Reported in 92 P. (2d) 268.

*H. Earl Davis,* for appellant.

*William Lucht, Jr., Thomas Corkery,* and *Robertson & Smith,* for respondent.

GERAGHTY, J.—This appeal is from a judgment of the superior court, entered upon the verdict of a jury, awarding damages to the respondent for injuries resulting from the alleged negligence of the appellant.

The principal contention urged by appellant for reversal of the judgment is that the respondent's evidence established, as a matter of law, that she was guilty of contributory negligence. The material facts may be summarized as follows:

The respondent sustained the injuries for which she sues by a fall into the elevator shaft of the Norfolk building, in Spokane, owned by the appellant. The building, five stories high, fronts on the north side of Riverside avenue. The first floor is used for commercial purposes, and the four upper floors for offices and studios. The respondent, a music teacher, had a studio on the fifth floor, with her living apartment in connection. The entrance to the building was had from Riverside avenue by a hallway thirty-five feet deep and about eight feet wide; one-half of this was taken up by a stairway leading to the upper floors.

The upper floors were also served by an elevator, entered through a door at the rear of this hallway. Elevator service was ordinarily furnished to the tenants until nine o'clock at night. At that hour, service ceased and the lights in the entry hallway were turned off, and the hallway would be unlighted, except for such light as might come from the upper floors through the stairway opening. Occasionally, by special arrangement, when recitals or entertainments were given in some of the studios, the management of the build-

ing would furnish special elevator service to a later hour.

Some of the tenants were supplied with keys to the elevator to enable them to use it after hours, if they ·so desired. The respondent was furnished a key when she became a tenant in the building, and was shown how to use it for opening the door to the elevator. She was familiar with the operation of elevators. In addition to the respondent, at least two other tenants had sleeping quarters in the building; and the building manager, with his wife, occupied a penthouse on the roof.

On the evening of her injury, July 30, 1936, the respondent left the building a few minutes before nine o'clock. She inquired of the elevator operator if he was going to leave the car at the first or the fifth floor. He told her he was going to leave it at the first floor. If the car was left at an upper floor, and she desired to use it, it would be necessary for her to go to the basement, where, by operating a switch, the car could be brought down to the basement floor. Sometimes there was a light in the basement and sometimes there was not, and it would be difficult for her to find her way about, so much so that latterly, if the elevator was not at the main floor, she did not attempt to use it.

On this evening, her purpose was to return to the building before ten o'clock. She had observed that it was the custom of the building manager to go out on Thursday nights, and he would not return ordinarily until about ten oclock. She thought that, if she hurried back before that hour, the car would be at the first floor, and she could take herself up to the fifth.

Respondent returned to the building shortly before ten. After stopping for a brief conversation with a woman who was leaving the building, she proceeded

to the elevator. The lights were out in the hallway, and it was dark. We quote her testimony from the abstract:

"I went to the elevator, I took out my little key that I had at that time, . . . and inserted it in this little hole in the door, and open the door part way, pulled it far enough so I could get my hand in and I pulled it open as far as it would slide easily. I had my right hand on the door because the door opens from the left to the right, I had my foot flush with the floor to feel for the floor of the car. I put my foot in feeling for it, and as I did, this door slid and I fell in fourteen feet."

On cross-examination, she testified:

"Well, my habit was in opening that door to ascertain if the elevator was there, was just to open it enough to reach my hand inside and feel the lock of the cage when I wasn't definitely positive that it was there. Q. You didn't do that this time? A. No, because I was so sure it had been left there, and it was still there. Q. So you were sure of that, notwithstanding the fact that you told me a moment ago that you didn't know whether it would be there or not? A. There was always a possibility. . . . Q. In order to put your foot in there, you had to hold on to this door? A. I was steadying myself with that. Q. It would have been just as easy and far more practical, for you to have opened the door as far as it was and just reached in with either hand, wouldn't it? A. It could have been. Q. So you could have done that very easily, and far more practically, than to stand there with one foot over that open hole to feel? A. If I had thought it would be an open hole. Q. But you did know that there was every possibility of that elevator not being there, didn't you? A. It could be possible."

She testified that there was no handle to the sliding door opening into the elevator.

"You open it by inserting the key and lift the latch and pull with the key in order to open the door to pull it back. It would go that far and it would stick or drag or pull very hard, you have to push it real hard to get it back, you would have to give it an extra push to get it back, to open the full width."

The appellant offered testimony tending to prove that respondent had made statements shortly after the accident and at the hospital the next morning to the effect that the accident was her own fault. These statements were denied by her.

A court is not justified in taking the question of contributory negligence from the jury unless the acts done are so palpably negligent as to preclude the possibility of a difference of opinion concerning them. *McQuillan v. Seattle*, 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799; *Jordan v. Seattle*, 26 Wash. 61, 66 Pac. 114; *Christianson v. Pacific Bridge Co.*, 27 Wash. 582, 68 Pac. 191; *Hillebrant v. Manz*, 71 Wash. 250, 128 Pac. 892; *Crumrine v. Grubb*, 165 Wash. 391, 5 P. (2d) 498; *Nelson v. Booth Fisheries Co.*, 165 Wash. 521, 6 P. (2d) 388; *Holm v. Investment & Securities Co.*, 195 Wash. 52, 79 P. (2d) 708.

The appellant strongly relies on the case of *Wheeler v. Hotel Stevens Co.*, 71 Wash. 142, 127 Pac. 840, Ann. Cas. 1914C, 576. In that case, suit was brought for injuries sustained through a fall into an elevator shaft. The jury returned a verdict in favor of the defendant, and the plaintiff appealed from the judgment entered upon the verdict. The judgment was affirmed. The facts are briefly stated in the court's opinion:

"The facts are few and simple. The appellant wife and a friend testified, that they approached the elevator for the purpose of going to the room of the latter in the respondent's hotel; that the door of the elevator shaft was open; that the elevator was not there, and

that the appellant, thinking that she was stepping into the elevator, stepped into the shaft without touching the door, and fell and was injured. The accident happened on the 3d day of August about midday, and she admits that the day was bright. There is no question of inadequate lights. The respondent's witnesses, including the elevator boy, testified that the door was not open to exceed one inch, and that the appellant could not have entered without opening it. They further testified that both the appellant and her friend stated immediately after the injury that the appellant opened the door."

The cited case does not aid the appellant; its implications are, rather, against her. There, the jury's verdict was in favor of the defendant on conflicting evidence; here, the verdict was in favor of the plaintiff. There, there was no question of inadequate lights; here, the respondent, in order to use the elevator, was required to make her way in darkness.

In *Ritter v. Norman,* 71 Wash. 563, 129 Pac. 103, 43 L. R. A. (N. S.) 657, it was argued that the plaintiff, in using a darkened stairway, was guilty of contributory negligence. In disposing of this contention, the court said:

"Nor can he complain, and charge a guest with contributory negligence or assumption of risk, merely because the necessities of his comings and goings drive him to the use of the stairway; unless indeed we are prepared to say that the mere use of a darkened way is negligence *per se.* Obviously, it cannot be so held in the absence of facts affirmatively showing carelessness on the part of the injured person. There is such a thing as reasonable care in the use of dark stairways."

So here, there was such a thing as reasonable care in the use of the dark hallway and elevator entrance. Whether the respondent had used reasonable care, under the circumstances, was a question for the jury.

Apart from whatever common law duty the appellant owed her tenants, she failed in compliance with the express mandate of an ordinance of the city of Spokane, which required that:

"All stairways, halls, corridors, passageways, stairs and exits to fire escapes in buildings used and occupied at night (except dwellings) must be lighted from sunset to sunrise, as follows:

"White light at head and foot of each flight of stairs.

"Same at intersection of halls, corridors or passageways, and at least one such light near the center of each hall when same is more than forty feet long, and one at each guide sign."

Taking respondent's testimony at face value, as the jury were entitled to view it, she did not walk heedlessly into an open elevator. Having opened the door part way, "as far as it would slide easily," and, holding her right hand on the door, she used her foot to feel for the floor of the elevator. "I put my foot in feeling for it, and as I did, this door slid and I fell in fourteen feet." She could, of course, have felt with her hand for the side of the elevator, or she possibly could have adopted some other expedient. It was for the jury to say whether, under the circumstances, she was guilty of negligence in the method she followed for ascertaining whether the elevator was in place or not. We think the court properly denied the motions for nonsuit and for judgment notwithstanding the verdict.

The lights in the hallway were controlled by switches on the west wall near the entrance to the building, more than twenty feet from the elevator. The appellant argues that the respondent could have turned on the lights and ascertained whether the elevator was in place.

In view of the fact that it was the admitted policy of the building manager to have the lights off after

nine o'clock, whether, in the exercise of reasonable care, the respondent should have used the switch to turn the lights on, proceeded to the rear of the hall to ascertain if the elevator was at the floor level, then returned to put the lights off, and walked back in darkness to the elevator, was a question for the jury.

■ Appellant assigns as error the giving of certain instructions. As the instructions are not set out in her brief, they cannot, under Rule of the Supreme Court XVI, subd. 5, 193 Wash. 23-a, be considered.

■ The appellant assigns error on the court's denial of her motion for a new trial. The motion was supported by the affidavit of one of the jurors to the effect that, while the jurors were unanimously of the opinion that the appellant was negligent, they were equally divided on the question of respondent's contributory negligence; and that the jurors had never reached a formal agreement on that issue.

The jury reported its verdict to the court. The impeaching matter set out in the affidavit so manifestly inhered in the verdict that the court was fully justified in disregarding it.

Finding no error in the record, the judgment is affirmed.

BLAKE, C. J., BEALS, MAIN, MILLARD, and JEFFERS, JJ., concur.

SIMPSON, J. (dissenting)—I am unable to agree with the conclusion of the majority respecting the defense of contributory negligence. I feel that respondent was guilty of contributory negligence and the appellant's motion for nonsuit or directed verdict should have been granted; and, in so stating, I am mindful of the rule laid down in *Corbaley v. Pierce County*, 192 Wash. 688, 74 P. (2d) 993, relative to taking cases from the jury.

It is a well settled rule in this state that, where it appears from the uncontradicted proof that the injury complained of was occasioned by the contributory negligence of the injured party, a question of law, as distinguished from a question of fact, is presented for determination.

In addition to the facts set out in the majority opinion, attention is directed to certain additional vital facts disclosed by respondent's testimony. She was an elevator operator with about five and one-half years experience in the city of Spokane, she knew how the elevators operated, and she was acquainted with their mechanical arrangement. Respondent rented a studio in appellant's building some time after the middle of March, 1936, and occupied it until the night of the accident, July 30, 1936, a period of over four months. During that time, she used the elevator many times during the day, and on an average of four or five times each week during the night under the same circumstances present on the night she was injured. She realized that the elevator ceased operations and the lights in the hallway were switched off at nine o'clock each evening. Respondent testified that, many times, she was confronted with the fact that the elevator was not at the landing when she attempted to use it in the evening, and that she could ascertain its presence or absence by extending her hand into the shaft a distance of six inches.

Where a danger is obvious, or known, a person is bound to use ordinary care to avoid it, and a recovery cannot be had where the person injured could, by the exercise of ordinary care, have avoided the injury, even though the defendant was negligent. *Hogan v. Metropolitan Building Co.,* 120 Wash. 82, 206 Pac. 959; *Wylie v. Green River Lumber Co.,* 8 Tenn. App. 373; *Lunsford v. Asheville Mfg. Co.,* 196 N. C. 510, 146 S. E.

129; *Murray v. Albert Lea Home Inv. Co.,* 202 Minn. 62, 277 N. W. 424; *Boles v. Hotel Maytag Co.,* 218 Iowa 306, 253 N. W. 515; *Young v. Prouty Lumber Co.,* 81 Ore. 318, 159 Pac. 565; *Silver v. Hause,* 285 Pa. 166, 131 Atl. 668; *Evans v. Orttenburger,* 242 Mich. 57, 217 N. W. 753; *Ballou v. Collamore,* 160 Mass. 246, 35 N. E. 463; *Sodomka v. Cudahy Packing Co.,* 101 Neb. 446, 163 N. W. 809; *Gray v. Levy,* 226 Mo. App. 991, 48 S. W. (2d) 20; *Flury v. Central Pub. House,* 118 Ohio St. 154, 160 N. E. 679; *Central Pub. House v. Flury,* 25 Ohio App. 214, 157 N. E. 794; *Bremer v. Pleiss,* 121 Wis. 61, 98 N. W. 945; *Claypool v. Wigmore,* 34 Ind. App. 35, 71 N. E. 509.

When one has knowledge of danger, the exercise of ordinary care requires the exercise of a higher degree of care than would be required from one without such knowledge. 20 C. J. 375; 20 R. C. L. 107, § 93.

In the following cases, the facts passed upon were very much like those in the case at bar, and in each of them the court held that the injured person could not recover because of the guilt of contributory negligence. *Murray v. Albert Lea Home Inv. Co., supra; Rice v. Goodspeed Real Estate Co.,* 254 Mich. 49, 235 N. W. 814; *Blankertz v. Mack & Co.,* 263 Mich. 527, 248 N. W. 889; *Keeter v. Devoe & Raynolds, Inc.,* 338 Mo. 978, 93 S. W. (2d) 677; *Boles v. Hotel Maytag Co., supra; Macon Sav. Bank v. Geoghegan,* 48 Ga. App. 1, 171 S. E. 853; *Rice v. Goodspeed Real Estate Co.,* 254 Mich. 49, 235 N. W. 814; *Bedell v. Berkey,* 76 Mich. 435, 43 N. W. 308, 15 Am. St. 370; *Murray v. Earl,* 282 Pa. 517, 128 Atl. 436; *Massey v. Seller,* 45 Ore. 267, 77 Pac. 397; *Globe Indemnity Co. v. Hook,* 46 Cal. App. 700, 189 Pac. 797.

In *Rice v. Goodspeed Real Estate Co., supra,* the facts were similar to those in the instant case, and in

setting aside a verdict in favor of plaintiff, the court said:

"There is almost unlimited authority in adjudicated cases covering the following propositions: (1) One is required to make reasonable use of his faculties of sight, hearing, and of intelligence to discover dangerous conditions to which he is or he may become exposed. (2) One who knows or in the exercise of ordinary care should have known the existence of danger from which injury might reasonably be anticipated and who by his voluntary acts or omissions exposes himself to such danger is guilty of negligence, if under the circumstances an ordinarily prudent person would not have incurred the risk of injury which such conduct involved. (3) Momentary forgetfulness of or inattention to a known danger may, and usually does, amount to negligence. See cases cited in notes of 45 C. J. pp. 947-950, and 957.

" 'Where the entrance is dark, it would seem that ordinary care would condemn the act of a person who steps into an elevator shaft without satisfying himself that the elevator is there.' 9 R. C. L. p. 1258."

The following statement was made in *Macon Sav. Bank v. Geoghegan, supra:*

"Where the entrance was dark, it would seem that ordinary care would condemn the act of a person, who knew the location of the elevator-shaft and that others might likely be using the elevator, in stepping into the elevator-shaft without satisfying himself that the elevator was in fact there."

Under the facts as related by the respondent, it appears that she was a competent elevator operator; that she was entirely familiar with the building, its hallways, lights, and the elevator; that she knew how the elevator operated and the dangers attendant upon its improper use. The care she should have used ought to have been commensurate with that knowledge. Respondent did not use that ordinary care required of

her under the circumstances present at the time of her accident, and therefore should not be allowed to recover.

For the reasons given, I dissent.

STEINERT and ROBINSON, JJ., concur with SIMPSON, J.