[No. 29720. Department One. April 16, 1946.]

FRANK H. GERI, *Respondent and Cross-appellant,* v. L. J. BENDER, *Appellant.*[1]

'Reported in 168 P. (2d) 144.

*McClure & McClure,* for appellant.

*Little, Burgunder & Smith, Tom A. Durham,* and *Florence Mayne,* for respondent and cross-appellant.

MALLERY, J.—Plaintiff pedestrian brought this action to recover for personal injuries resulting from being struck by an automobile driven by the defendant. The plaintiff's allegations of negligence were denied by the defendant, who by affirmative pleading raised the defense of contributory negligence. Trial before the court and a jury resulted in verdict for the plaintiff. The court denied the defendant's motion for judgment *non obstante veredicto* and, by a general order, granted a new trial. The defendant has appealed from the overruling and denying of the motion for judgment *non obstante veredicto*, while the plaintiff has cross-appealed from the order granting a new trial. We shall refer to the parties as plaintiff and defendant throughout this opinion.

Upon this state of the record, our review is limited to a consideration of the sufficiency of the evidence to take the case to the jury.

█ A motion for judgment n. o. v. admits the truth of the plaintiff's evidence, together with all inferences reasonably to be drawn therefrom and requires that the evidence be interpreted most strongly against the defendant and in the light most favorable to the plaintiff. *Billingsley v. Rovig-Temple Co.,* 16 Wn. (2d) 202, 133 P. (2d) 265; *White v. Fenner,* 16 Wn. (2d) 226, 133 P. (2d) 270; *Carroll v. Union Pac. R. Co.,* 20 Wn. (2d) 191, 146 P. (2d) 813; *Omeitt v. Department of Labor & Industries,* 21 Wn. (2d) 684, 152 P. (2d) 973; *Mathers v. Stephens,* 22 Wn. (2d) 364, 156 P. (2d) 227.

Under this rule, the jury was entitled to believe the following facts. On October 5, 1941, a record crowd of forty-five thousand persons were in the University of Washington stadium to witness the Washington-Stanford football game. Because it was a close contest, virtually everyone remained until the final gun. It was during the confusion which inevitably attends the dispersal of such a gathering that the plaintiff was struck and injured by the automobile driven by the defendant. The accident occurred on Montlake boulevard shortly after four p. m., on a dry, clear day. Montlake boulevard, one hundred forty feet wide, is one of Seattle's major north and south traffic arteries. The paving is forty feet in width and carries two lanes of traffic in each direction. There are no paved sidewalks, but the portion of the way to the east of the paving is sixty feet wide and suitable for pedestrian traffic, while that to the west is fifty feet in width and is likewise suitable.

The University stadium lies to the east of the boulevard. Plaintiff's car was parked on the opposite side of the boulevard and to the north of the stadium entrance. The unpaved portions of the way were blocked by cars, which were parked three deep. As a consequence, the northbound crowd was compelled to walk in the outer northbound lane of paving, which is the lane nearest the eastern

boundary of the paved portion. According to the plaintiff, they were so directed by the police officers on duty there.

"Q. Now, just describe to the jury what you did, what happened, and until this accident took place. A. Well, the car, we sat in the section, were all together at first, but made the agreement we would meet at the car. Knew in the crowd would never be able to keep together and go in the crowd, so we made the agreement and started out for the car, and of course you just milled with the crowd, and try to get through as best you could, and we got out here on the street, they had policemen on the street, all over the place, and directing the different people different ways over the overpass, *and also down the road where I was going*; also had groups going the other way; no cars going at all at that time and *I walked with the crowd down the road* and wasn't paying no attention to cars or anything else because no cars coming out. The crowd was too great; cars lined up on all sides of the road, too, and all going to their cars just like we were. Q. Then when you were walking did you go into the street? A. Yes, we had to go into the street because cars were parked on both sides of the street; no room to walk anywhere else but the street. Q. Any traffic cops there directing the people into the street? A. Many of them. Q. Then, after you once got on the street, where the cops were, was there any traffic cop of any kind later directing you off the street? A. No." (Italics ours.)

The defendant, who had also attended the game, was driving northward upon the boulevard. His rate of speed varied between ten and fifteen miles per hour. He sounded his horn continually. Two of the plaintiff's witnesses testified that they had been to the rear and about two feet to the right of the plaintiff, and that the defendant had narrowly missed them before he struck the plaintiff, knocking him to the ground. The point of impact was approximately one thousand feet north of the stadium and eight feet to the west of the eastern boundary of the pavement. The plaintiff testified further:

"Q. Just tell the jury in your own words what happened when the car hit you. First, did you see the car before it hit you? A. No. Q. You were walking north? A. I was

walking north on the boulevard. Q. Were there people in front of you? A. Yes. Q. Were there people on the side of you? A. Yes. Q. People to the rear of you? A. As far as I knew, there was a crowd all coming out, crowding up, coming along."

The defendant stopped almost immediately after the impact and was there questioned by officers for about ten minutes, and then allowed to proceed upon his way. The plaintiff, aided by two friends, walked to his car. The evidence is not clear as to the number of vehicles in the street at the time of the accident. The plaintiff related that there were none, while one of his witnesses placed the number at twenty to one hundred, strung out for about sixteen hundred feet along the boulevard. In any event, the jury was justified in believing that the traffic was predominantly foot traffic, and that there were few if any cars on the road.

The defendant has assigned as error the following: (1) overruling of his motions for nonsuit; (2) for an instructed verdict; (3) for judgment n. o. v.; and (4) refusal of his requested instruction to the jury to return a verdict in his favor. Defendant's negligence is admitted. The sole question raised by the assignments of error is whether plaintiff was guilty of negligence *per se,* so that it was improper for the court to submit the case to the jury.

Rem. Rev. Stat., Vol. 7A, § 6360-101 [P.P.C. § 295-53], provides that:

"Pedestrians on any public highway where a sidewalk is provided shall proceed upon such sidewalk. *Pedestrians on any public highway where no sidewalk is provided shall proceed on the extreme left-hand side of the roadway and upon meeting an oncoming* vehicle shall step to their left and clear of the roadway." (Italics ours.)

In the recent case of *Ross v. Johnson,* 22 Wn. (2d) 275, 155 P. (2d) 486, p. 285, we said:

"Many of our decisions are assembled in the recent case of *Portland-Seattle Auto Freight v. Jones,* 15 Wn. (2d) 603, 131 P. (2d) 736, wherein it is said:

" 'Statutes or municipal ordinances prescribing the rules of traffic establish rules of conduct which must be obeyed. They are standards for testing negligence and contributory

negligence. The rule in this state is that a violation of those rules constitutes negligence *per se.*'

"The opinion in the cited case then quotes with approval from *Johnson v. Heitman,* 88 Wash. 595, 153 Pac. 331, as follows:

" 'This court is definitely committed to the rule that "a thing which is done in violation of positive law is in itself negligence," *in the absence of pleading and proof of such peculiar facts as would tend to justify the violation.* [Citing cases.]

" 'In consonance with that rule, this court, in common with others, has repeatedly held that, *in the absence of evidence of circumstances tending to excuse by making such a course reasonably necessary,* a failure to observe the law of the road, resulting in injury, is negligence as a matter of law.' " (Italics ours.)

█ The burden, then, was upon the plaintiff to come forward with evidence of excusatory circumstances to justify the violation of the statute. We think reasonable minds can differ as to the sufficiency of the circumstances to excuse the violation of the statute. It is, therefore, a question of fact for the jury and not one of law for the court to pass upon.

██ As to the duty of care imposed upon the plaintiff by the common law aside from the statute, unless the conduct of a party charged with contributory negligence was so palpably negligent as to preclude the possibility of difference of reasonable minds concerning it, the question of contributory negligence also falls within the province of the jury, *American Products Co. v. Villwock,* 7 Wn. (2d) 246, 109 P. (2d) 570, 132 A. L. R. 1010; *Bender v. White,* 199 Wash. 510, 92 P. (2d) 268, as does the question of proximate cause.

"Furthermore, the burden of proving negligence by a preponderance of the evidence rests upon the party alleging it, and the party charged is not required to assume the burden of proving that he was not negligent, but is only required, in response to a *prima facie* case of negligence made against him, to come forward with evidence excusatory of his negligence. The extent to which he must go in that respect is only to the point of producing evidence sufficient to balance the scales upon that issue. Beyond that

point, he is not required to go. The original burden of proving negligence by a preponderance of the evidence remains throughout the case upon the party charging negligence." *American Products Co. v. Villwock, supra.*

The motion for judgment n. o. v. was properly denied.

■ Coming now to a consideration of the plaintiff's cross-appeal, it must be noted that the order granting the new trial was a general one. The rule expressed in *Henry v. Larsen,* 19 Wn. (2d) 690, 143 P. (2d) 841, is controlling here.

"When a motion for a new trial is made upon a number of grounds and the order does not disclose upon which of the grounds the ruling is based, it will not be reviewed if it was within the sound discretion of the court to grant the motion upon any of the grounds assigned. The legal sufficiency of any specific reason, either oral or written, assigned for granting or denying a motion for new trial will not be reviewed unless it is incorporated into the formal order and appears to be the exclusive ground upon which the ruling is based."

The order denying the motion for judgment n. o. v. and granting a new trial is affirmed.

DRIVER, C. J., MILLARD, and STEINERT, JJ., concur.

SIMPSON, J., concurs in the result.