STANLEY MILLEDGE, Associate Judge.
The plaintiff, an employee of a tenant in the Congress Building in Miami, sued the landlord for personal injuries suffered as a result of being hit on the head by an elevator door as he was leaving the car after it reached the floor of plaintiff’s office. The jury returned a verdict for the defendant. The plaintiff complains of several of the charges to the jury and to a trial ruling excluding some testimony on behalf of the plaintiff.
Under the facts of the case, one of the charges was tantamount to a directed verdict for the defendant. As the car approached the plaintiff’s floor, the operator called out, “Watch your step.” He opened the safety gate, which is a part of the car. This must be completely closed or a stopped car will not move, and if it is opened the car automatically stops. After opening the safety gate, the operator then opened the heavy outer door. When this door had opened wide enough to permit the plaintiff to leave, he did so, and while in the process, the outer door reversed its course and, in closing, struck the plaintiff in the head as he was leaving the car. When the outer door had reached the point at which the plaintiff was passing from car to corridor, the door jammed, the recoil dislodged the operator’s hand from the handle and the recoil caused the door to close. This door jamming was not a frequent occurrence but it had happened a number of times before and a routine procedure of calling the maintenance people at Otis Elevator Company was established. This was known to the operator in question. It was not known to the plaintiff.
It is not necessary to consider the question of whether the defendant was negligent in permitting the door to jam. Assuming that it was not negligence to permit this condition, the likelihood of its occurrence was a factor which the operator should take into account before inviting passengers to leave the car. If there was risk of recoil from jamming, then due care required that no invitation to exit should be issued until the danger was passed by the completion of the opening process. It becomes highly significant, if it is not the crux of the case, whether the operator’s conduct constituted an invitation to leave. In view of the operator’s knowledge of the risk and the plaintiff’s ignorance of it, it stretches the point to say that, as a matter of law, the operator’s conduct did not constitute an invitation to leave. The purpose of the whole operation is to provide for a passenger’s exit from car to corridor. The only purpose for opening the door is to permit the passenger’s departure. When the door is opened wide enough to accomplish the purpose, there was no rea- ■ son for the passenger to wait longer. When there is no basis for charging the passenger with such knowledge, may he not take the partial opening as an invitation?
It is not obligatory to answer this question, for at the very least it was- a question for the jury to answer. They were not permitted to decide the point, because the judge charged them that “there is no invitation to a passenger to exit from an elevator until the door is at rest in an open position sufficiently wide to enable the passenger to alight safely.” Since there was no contention that the outer door was “at rest” this charged the plaintiff out of court. This charge says, in effect, that the passenger should know as much as the operator as to risk of jamming and so knowing, he must not take the opening as an invitation until the door opening movement ends. This is emphasized in the requirement of the charge that there can be no invitation by an operator until the passenger perceives that leaving can be done “safely.” To accept an invitation to plunge into an obviously dangerous condition may be contributory negligence, but this is not to say that under such conditions the invitation could not be issued. A conductor may invite passengers to leave a moving train. Acceptance of the invitation may or may not, according to the circumstances, be contributory negligence.
*247 The act of an elevator operator in stopping the car and opening the door has been held an invitation to passengers to leave the car. Grant v. Allen, 141 Ga. 106, 80 S.E. 279; Jenkins v. Missouri State Life Ins. Co., 1933, 334 Mo. 941, 69 S.W.2d 666; Tousey v. Roberts, 114 N.Y. 312, 21 N.E. 399; City National Bank v. Pigott, Tex.Civ.App.1925, 270 S.W. 234.
The trial judge was led to give the instruction now under discussion by a group of cases cited by the appellee to the effect that a partially opened elevator door is a warning of danger rather than an invitation. These cases do not relate to situations in which the door is being manipulated by an operator, but relate to situations where a passenger in a corridor, thinking he is entering an elevator, falls down the shaft because the car is not there. Typical of this group of cases is Macon Savings Bank v. Geoghegan, 1933, 48 Ga.App. 1, 171 S.E. 853, where the plaintiff, at night, in the dark, when the defendant landlord was under duty to light the lobby, observing that the elevator door to the shaft was open about six inches and thinking that he saw the elevator car standing there, opened the elevator door and stepped through, falling down the shaft. This group of facts has nothing to do with those of the present case, as the earlier Georgia case of Grant v. Allen, supra, 141 Ga. 106, 80 S.E. 279, clearly indicates. In the Geoghegan case, the appellee says: “It was pointed out that the case was distinguished from those where the wholly open door of an elevator constituted an invitation to enter.” So, far from this being what the Georgia court pointed out, what they actually said was: “This is not a case wherein at the time of the accident the elevator either actually or supposedly was in charge of the defendant or its agents, nor is it a case where the partially open door to the elevator shaft constituted an invitation to enter.” [48 Ga.App. 1, 171 S.E. 855.]
It is reasonable to suppose that if the trial judge had had our opportunity to read and check the cases relied on for the' charge in question, it would never have been given.
What has been said about the significance of the operator’s knowledge and the plaintiff’s ignorance of the risk of jamming, bears upon the issue of contributory negligence. No assignment of error challenges the submission of this question to the jury. The defendant was not entitled to more than one charge on contributory negligence. The defendant requested many; it received three full charges on this subject, and in five others this defense is dealt with. This was undue emphasis. In Lithgow Funeral Centers v. Loftin, Fla.1952, 60 So.2d 745, 746, 747, the Supreme Court, on the subject of repetitious charges said that “there is no reason for saying the same thing more than once except for the purpose of adding emphasis to the statement. This Court has criticised such undue emphasis in a number of cases.”
The last point we will notice is the trial judge’s ruling sustaining the defendant’s objection to a question to one of defendant’s elevator operators as to the custom and usage of passengers in the Congress Building leaving the car for the floor of destination. The defendant treated this as an effort to prove a negligent present act by proof of prior acts of negligence. This was not the point at all. Custom and usage were relevant to show what conduct both passengers and operators treated as invitations to exit, and the reasonable expectations of the passengers. The habit of street c^r passengers in boarding or leaving at a certain place is significant in determining whether the act of a motorman in stopping there constituted an invitation to alight. Cramer v. Springfield Traction Co., 112 Mo.App. 350, 87 S.W. 24. The custom of the patrons at a race track, with the knowledge of the proprietor, in using the bleachers as stairs as well as seats, creates a duty to maintain the bleachers for the purpose in which they are actually used. Schweikert v. Palm Beach Speedway, Fla.1958, 100 So.2d 804. Even on the far broader question of the customs of others as relevant to the question of what constitutes due care, the late Mr. Justice Brown, in Seaboard Airline *248 Ry. Co. v. Watson, 94 Fla. 571, 113 So. 716, 718, said:
"There is a common sense and reasonable basis for the contention that what is ordinarily and usually done by men generally, engaged in the same work, has some relevancy to the inquiry as to what an ordinarily prudent person would do under the same circumstances.”
The testimony rejected should have been admitted.
For the reasons stated, the judgment appealed from is reversed, and the cause is remanded for a new trial.
Reversed and remanded.
CARROLL, CHAS., C. J., and HORTON, J., concur.