STEIN v. GENERAL NECESSITIES CORPORATION.

1. LANDLORD AND TENANT—ELEVATORS—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.

In an action by a tenant against his landlord to recover for personal injuries sustained when he fell into the elevator well from the ground floor, where plaintiff admitted that he assumed that the elevator was there because the gate was up, although he knew that it had been propped up by his agent and so could not drop automatically when the elevator ascended, he was guilty of contributory negligence as a matter of law, barring recovery.[1]

2. EVIDENCE—CONTRADICTORY STATEMENTS.

While contradictory statements of a plaintiff may go to a jury for a sifting to discover the truth, the rule is not sufficiently lax to admit a positive statement of fact, es-

[1]Landlord and Tenant, 36 C. J. § 911.
As to contributory negligence in stepping into elevator shaft, see notes in 2 L. R. A. (N. S.) 756; 24 L. R. A. (N. S.) 246; L. R. A. 1915E, 731; L. R. A. 1917D, 892.

tablishing contributory negligence, being rendered an affirmative showing of due care by subsequent testimony that. the first statement may or may not be true.[2]

Error to Wayne; Webster (Arthur E.), J.    Submitted June 10, 1925.    (Docket No. 99.)    Decided October 1, 1925.    Rehearing denied December 22, 1925.

Case by Albert E. Stein against the General Necessities Corporation for personal injuries.    Judgment for plaintiff.    Defendant brings error.    Reversed, and judgment ordered entered for defendant.

*William Henry Gallagher,* for appellant.

*F. C. Rommeck, F. A. Schopp,* and *J. P. Uvick,* for appellee.

WIEST, J.    Plaintiff was . interested, by way of commissions on sales, in a second-hand furniture business conducted on the third floor of a building owned by defendant in the city of Detroit.    About 2 o'clock, the afternoon of June 10, 1920, having occasion to deliver some furniture, plaintiff summoned a delivery man, helped load the furniture upon the elevator in the building, had the delivery man operate the elevator to the ground floor and there helped unload and carry the furniture to a truck in the alley.    The elevator was operated by those using it, and at the ground floor had a gate which was lifted by hand and, by a tripping device, settled to place when the elevator ascended.    The delivery man, having had some experience with the gate not remaining up when lifted, propped it up with a stick and left it so propped after removing the load.    When the load was removed, and while the delivery truck with the furniture was still in the alley, plaintiff, with the aid of ice tongs, dragged a cake of ice, weighing about 200

[2]Trial, 38 Cyc. p. 1514.

pounds, from the alley and along the passage in the building to the elevator, intending to take it to the third floor.    In dragging the ice he walked sideways, but before he reached the elevator he glanced toward it and saw the gate up.    Seeing the gate up he assumed the elevator was there and continued to drag the ice, but when his left foot was within a few inches of the elevator opening he discovered the elevator had been removed and he either slipped on the wet floor into the elevator well or was carried in by the momentum of the ice, and fell to the bottom with the ice striking him, and sustained severe and permanent injuries.    He brought this suit to recover damages, claiming defendant was negligent in not providing light at the elevator and in not having at the elevator opening an automatic door or gate constructed to open and close by the action of the elevator in descending or ascending.    Plaintiff had verdict and judgment thereon for $16,500.    By motion to direct a verdict at the close of plaintiff's evidence, and again at the close of all the evidence, and motion for judgment notwithstanding the verdict, and for a new trial, defendant has saved, and now presents by writ of error, the questions of plaintiff's contributory negligence, defendant's negligence, the applicability of the statute requiring automatic doors or gates to elevators in manufacturing establishments, and the claim that the verdict is against the weight of the evidence.    Plaintiff's case rests upon the negligence of defendant in not providing automatic gates which would open when the elevator was present and close when it was absent, and yet his proofs established the fact that the delivery man, employed by him, propped the gate up with a stick so it could not come down when the elevator was away from the ground floor.    With the gate so propped up it was negligence on the part of plaintiff to assume that, because the

gate was up, the elevator was at that floor and to back toward it, pulling a 200-pound cake of ice, without looking to see whether the prop was still under the gate and the elevator at that floor.    There was no evidence that the elevator gate would not lower in place if not propped up, when the elevator was operated.    There was evidence the gate would not always remain up while the elevator was being loaded or unloaded.    The injury to plaintiff did not come because the gate would not stay up, but because the gate was propped up by the delivery man working for plaintiff, so it could not come down when the elevator left the ground floor.

Plaintiff, on his direct-examination, testified:

"When Hayes (the delivery man) brought this last load of furniture down on the elevator, he raised the gate and I believe he made an attempt to keep it up and it would not stay up, and somebody suggested that they prop a stick up under it.    If there was a stick there or not I do not know, but, however, the gate would not stay up and he hunted about for a stick or had the stick there and propped the stick up under the gate in order to keep it up.    He raised the elevator gate with his hand, pulled it up to the level as far as it would go after the elevator had stopped at that floor.    Then he either had the stick on the elevator or it was about there some place, and he put it under the gate to keep it in that position.

"*After I saw him raise the gate and put the stick under it,* we both started to unload what furniture was on the elevator into the truck, which was outside in the alley, about 35 feet from the elevator shaft. *   *   *   From the entrance of the building to the hallway was about 10 or 12 feet.    There you made a turn of another 3 or 4 feet, then you proceeded down a hallway about 6 feet to the elevator proper.    So that the elevator was about 16 or 18 feet from the building entrance.    In other words, the hallway leading from the building entrance to the elevator shaft has a 3 or 4 foot jog in it as you enter. *   *   *

"When I took hold of the ice with the tongs with my right hand I dragged it along on the floor I was

somewhat bent to the weight of pulling it, so I sort of walked sideways, kind of looked toward where I was going.

"As I turned the corner of the jog in the hallway I stopped immediately to look toward the elevator to see the condition of the elevator, whether it was there or something to that effect.    I saw the gate was up. It was exactly as it was left just prior to taking off the last articles from the elevator.

"I made another stop immediately at the edge of the landing to determine the second time whether the elevator was there, or whether it was necessary for me to raise the ice or lower it as the position of the elevator would need, or be level with the floor landing.    In other words, when I took hold of the ice with my tongs in the alley, I dragged it across the pavement to the entrance and then down the hall about 12 feet to the jog in the hall, and then along the jog 4 feet to my right, and then turned again to my left to the end of the jog toward the elevator shaft and at this point is where I stopped to look up at the elevator to see whether the elevator gate was there. It was, as it always was when the elevator was there, so I dragged it immediately opposite the gate and nearly to it, and as I said before the floor was wet, I stopped immediately at the entrance of the elevator, I lost my balance, or my foot must have slipped on the floor down into the hole.

"At the time my foot slipped or I lost my balance, I might have been three or four or five inches from the edge of the floor, I don't know which, I am not sure.    By that I mean I was three or four inches from the elevator well."

This testimony of plaintiff established his contributory negligence, but on cross-examination it is claimed he qualified such testimony and made the question of his contributory negligence one of fact for the jury.    He testified:

"I assume that Hayes put the props under the gates, now how he done it I ain't sure of that either.    That is about how it was done.    I ain't saying for a certainty whether I was there or not when he was doing it.

"*Q.* Where did you get the idea of it then when you told us about it yesterday?

"*A.* I supposed that is the way it was done because that is the way it looked.    I assume in order to get a gate up in the position where you could walk under it you would have to raise it.

"*Q.* Yesterday you testified that you had seen Hayes raise the gate and put a stick under it?    Is that right?

"*A.* Well, I am not sure of that.    He might have done it on another occasion.

"*Q.* Why did you say you saw him do it at that time?

"*A.* I might have seen him, I may not have seen him.    I just assumed that he done it.    That is the way he has done it, I ain't sure that he really done it then.

"*Q.* You have seen it done that way before, is that what you mean?

"*A.* I am not sure, I did not take that much interest in the elevator, to be frank with you.

"*Q.* Why do you assume that?

"*A.* Normally that is what a person would have to do in order to get the gate in that position.

"*Q.* How do you know?

"*A.* Just by that reason and none else.

"*Q.* How do you know that normally you have to do that?

"*A.* I didn't think the gate would go up itself, it never did go up itself.

"*Q.* Would it stay up itself?

"*A.* No, I don't think it would.

"*Q.* Why don't you think so?

"*A.* It was propped up there, that is the way I know of, as much as I know of it, it was always propped up.    That is the way I have seen it before myself.

"*Q.* Always propped up?

"*A.* Yes, sir.

"*Q.* So upon this occasion you would assume it had been propped up too?

"*A.* That is all.

"*Q.* As a matter of fact you might have seen Hayes in the act of propping it up as you stated yesterday?

"*A.* I might have, that is about all I can testify, I

would not swear to that situation.    If I swore to it yesterday I just assumed that I seen it.

"*Q.* Yesterday you told counsel, when he asked you:

"'*Q.* That you had seen Hayes raise the gate and put a stick under it.

"'*A.* It wouldn't hardly be necessary for Hayes to tell me he had put a stick under it, there was no cause for that.

"'*Q.* You would know it anyway, would you?

"'*A.* I know that he might have done it, I don't know, however.    He would keep the gates up where they would not stay up.'

"*Q.* From your experience there before, and knowing you had to have a stick under it, you assumed at this time that Hayes would do the very same thing as others had done, is that the idea?

"*A.* Practically that.

"*Q.* Assuming that he did do that, you don't recall now looking to see if he did do it or not?

"*A.* No, not positively sure.    *    *    *    I had not seen Hayes use this block before the day of the accident.    Upon this day I did not speak to him about taking it out from under the gate.    At the time I was going down the passageway and glanced over my shoulder I did so for the purpose of seeing the gates. At that time I saw the gate was there, and assumed the elevator was there also."

Under plaintiff's own testimony the court should have directed a verdict in favor of the defendant.    He had no right to assume that the elevator was there because the gate was up, for he knew it had been propped up a few moments before, either by seeing it done or knowing it had to be propped up to keep it from coming down.    Plaintiff's qualification of his testimony given on direct-examination was of no probative value.    Plaintiff either saw the delivery man place the stick under the gate or did not see him do it.    He said he saw the stick so placed, and later did not say he did not see it so placed.    If he saw the stick so placed, or knew it was done, he certainly was not acting with ordinary care, had no right to

assume the elevator was there because the gate was up, and was guilty of contributory negligence. While contradictory statements of a plaintiff may go to a jury for a sifting to discover the truth (*Goonen* v. *Railroad Co.*, 218 Mich. 502), the rule is not sufficiently lax to admit a positive statement of fact, establishing contributory negligence, being rendered an affirmative showing of due care by subsequent testimony that the first statement may or may not be true. Plaintiff knew it was a practice to prop the gate up and when so propped it could not come down if the elevator was removed and, knowing this, it was negligence on his part to assume the elevator was present because the gate was up and to act on such assumption. And this is true whether he saw the gate propped up by Hayes or not.

We find no occasion to discuss other claimed errors. Defendant was entitled to a directed verdict and judgment notwithstanding the verdict.

The judgment is reversed and the case remanded with direction to enter judgment for defendant. Defendant will recover costs.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.