1980‡.   CAMP v. CURRY-ARRINGTON COMPANY.

DECIDED JANUARY 30, 1930.   REHEARING DENIED FEBRUARY 18, 1930.

James F. Kelly, Porter & Mebane, for plaintiff.
Maddox, Matthews & Owens, for defendant.
BELL, J.   The exception in this case is to a judgment of non-

suit, the action being to recover for injuries received by the plaintiff in falling through an elevator-shaft in a building of the defendant.

The petition alleged substantially the following facts: Camp, the plaintiff, was injured by falling into an elevator shaft in the store of Curry-Arrington Company, the defendant, while undertaking to deliver ice into the basement of the store by means of the elevator. The building consisted of three stories besides the basement, all of which were reached by the elevator. The defendant carried on a drug business, and in connection therewith manufactured ice-cream in the basement. In the business of making and selling ice-cream the defendant used large quantities of ice which it bought from Rome Ice Company, and which it had been accustomed to buy for a number of years.

On the morning of June 1, 1928, the plaintiff, with one Adams, both of whom were in the employment of the ice company, went to the place of business of the defendant for the purpose of delivering ice in the usual manner. The ice was carried in a truck driven by Adams and which he stopped near the building for the purpose of making a delivery for the defendant. This was the first time that the plaintiff had assisted in delivering ice to the defendant, although Adams had been making such deliveries for a long time. When the truck was stopped the plaintiff delivered a small piece of ice to a barber-shop across the street, while Adams went into a room at the rear of the defendant's building, and to the elevator-shaft located in this room, to see that the elevator was properly placed on a level with the first floor, so that the ice might be placed thereon for the purpose of being carried into the basement. Adams found the elevator at rest in the basement, and brought it to a level with the first floor, where he left it with the door thereto open. He then returned to the ice-truck, from which he and the plaintiff unloaded a 200-pound block of ice, which the plaintiff with a pair of ice-hooks dragged across the room toward the elevator as placed by Adams. In the meantime some person, without the knowledge of the plaintiff or Adams, had moved the elevator without closing the door thereto, and, the shaft being located at a place where there was but little light, the plaintiff, in attempting to drag the ice across the floor and onto the elevator, was precipitated through the shaft to the bottom of the basement and seriously injured. The employees of the ice company, in-

cluding Adams, had been accustomed to make deliveries in the manner attempted on the occasion in question, and were expected by the defendant to use the elevator for this purpose.

The petition contained the following allegations of negligence: "That the defendant, while your petitioner was in the discharge of his duty to and toward the defendant, negligently and carelessly ran said elevator from said first floor to the defendant's said building to the second floor, and, upon so doing, left open, and failed to close, the door leading from said first floor into said elevator, without any warning or notice whatsoever to your petitioner that said elevator had been moved from said first floor to said second floor, and, the door thereof left open and not closed, said defendant knowing that your petitioner at said time was in the act of putting said ice into the defendant's store as aforesaid, and knowing that plaintiff would use said elevator to put said ice on for the defendant. That the defendant knew that said elevator and the space immediately in front of said elevator was in a darkened condition, and that it was with difficulty that the true condition inside of said elevator-shaft could be told, especially when one went from the outside of said building, from the sunlight, into said dark place in, around, and near said elevator. . . That defendant was negligent in maintaining said elevator in said darkened condition in said elevator-shaft and around said elevator-shaft."

We think the court erred in granting the nonsuit. Under the evidence the jury could have found that the plaintiff had proved his case as laid, and it did not conclusively appear that he was not in the exercise of ordinary care. The evidence failed to account directly for the removal of the elevator, but tended to show that no other persons were about the place except the officers or employees of the defendant and the plaintiff and his coemployee Adams, and that neither the plaintiff nor Adams was responsible for its removal. Although the elevator was used only for private purposes, and was not for the public or passengers, the jury still could have found from the evidence that the plaintiff was an invitee, since it was customary for the ice company to make deliveries to the defendant's basement by means of the elevator, and since the evidence authorized the inference that the defendant should have expected that some employee of the ice company would use the elevator for this purpose at or about the time in question.

It is true that the plaintiff had not before assisted in making any delivery of ice to the defendant, and that for a long period of time the deliveries had been made by Adams either alone or in company with some one other than the plaintiff. Adams testified that he himself "went to work on this truck under another man," who instructed him to carry the ice "down in the basement. The other man always done that. . . I guess the store opens there at 7 o'clock in the morning. It was always open when we delivered the ice there."

From this and other evidence it was a reasonable inference that the defendant had not agreed to accept deliveries of ice from Adams only, or from any particular employee of the ice company to the exclusion of others, and, thus, the jury could have found that any employee whom the ice company elected to send with the ice, or as many employees as were necessary for this purpose, but no more, had the right to use the premises, including the elevator, for the purpose of making such delivery.

We are therefore of the opinion that while the defendant may have been under no duty to anticipate that the plaintiff as a particular person would make the delivery on the day of his injury, the evidence would have authorized the conclusion that any proper person or persons whom the defendant might send for this purpose were invited to enter for the purpose of attending to the matter in hand.

As to the immediate circumstances of the injury, Adams had just gone into the building to arrange the elevator and at the same time had spoken to some employee of the defendant and ascertained the quantity of ice wanted. Not more than three minutes elapsed between the time of his placing the elevator at the first floor and the bringing in of the ice by the plaintiff. He informed the plaintiff that the elevator was ready, and the plaintiff proceeded with the task of placing the ice thereon. The plaintiff testified that the room was to an extent in a darkened condition, that the floor was discolored, and that he thought "the elevator was there, because it looked just like the color of the floor." The elevator had in fact been carried to the second floor and the shaft was left open.

Perhaps it would not have been negligent for the defendant to remove the elevator (if it did) had the operator closed the door so as to prevent another from falling into the shaft; but the jury

were authorized to find that the open door tended to indicate that the elevator remained, as left by Adams, in position for use by the plaintiff.

In view of all the facts and circumstances, could the jury have found from the evidence that the defendant was responsible for the removal of the elevator, with the attendant failure to close the door, as the result of which there was created the dangerous condition complained of? We think the maxim res ipsa loquitur could have been applied, and that under it an affirmative answer to this question could have been made. See, in this connection, *Butler* v. *Lewman,* 115 *Ga.* 752 (3) (42 S. E. 98) ; *Palmer Brick Co.* v. *Chenall,* 119 *Ga.* 837 (3) (47 S. E. 329) ; *Monahan* v. *National Realty Co.,* 4 *Ga. App.* 680 (3) (62 S. E. 127) ; *Sinkovitz* v. *Peters Land Co.,* 5 *Ga. App.* 788 (2) (64 S. E. 93) ; *Helmly* v. *Savannah Office Building Co.,* 13 *Ga. App.* 498 (2) (79 S. E. 364) ; *Fulton Ice & Coal Co.* v. *Pece,* 29 *Ga. App.* 507 (6) (116 S. E. 57) ; *Bonita Theatre* v. *Bridges,* 31 *Ga. App.* 798 (122 S. E. 255) ; *Parrish* v. *Central of Georgia Ry. Co.,* 36 *Ga. App.* 133 (3) (135 S. E. 762) ; Jones *v.* Bland, 182 N. C. 70 (2) (108 S. E. 344, 16 A. L. R. 1383).

Counsel for the defendant in error have not controverted the question of negligence on the part of the defendant so much as they have sought to maintain that the plaintiff was not in the exercise of ordinary care. In our opinion each of these questions involved issues of fact for determination by the jury in the light of all the circumstances. *Wynne* v. *Southern Bell Telephone & Telegraph Co.,* 159 *Ga.* 623 (2) (126 S. E. 388) ; *Collins* v. *Augusta-Aiken Ry. &c. Corp.,* 13 *Ga. App.* 124 (2) (78 S. E. 944).

The present case is distinguished from the recent case of *Peniston* v. *Newnan Hospital,* 40 *Ga. App.* 367 (149 S. E. 715). In that case there were no facts to warrant the plaintiff in assuming that the elevator would remain where he placed it. He had merely left the door unlatched, not open ; and the elevator had entrances on two sides and was likely to be used at any time by others. Moreover, the *Peniston* case was decided on demurrer, while the present case is here on the evidence, and, in dealing with questions of evidence, "latitude is allowed for drawing reasonable inferences and deductions from the evidence to support the plaintiff's case ; whereas on questions raised by demurrer a petition is to be construed most strongly against the pleader." *Central of Georgia Ry. Co.* v.

*Tapley,* 145 *Ga.* 792 (3 b) (89 S. E. 841); *Kendall* v. *Wells,* 126 *Ga.* 343, 352 (55 S. E. 41); *Emlen* v. *Roper,* 133 *Ga.* 726, 729 (66 S. E. 934); *Kirkland* v. *Brewton,* 32 *Ga. App.* 128 (9) (122 S. E. 814).

There is also a material difference between this case and the cases from other jurisdictions relied on by counsel for the defendant in error. We will now refer to some of the cases cited in their very careful and painstaking brief.

In the case of Stein *v.* General Necessities Corp., 232 Mich. 322 (205 N. W. 104), the evidence conclusively showed that the gate to the elevator was out of order and had been propped up. This fact was known to the plaintiff, and therefore he could not have assumed that because the gate was up or open the elevator was in place. A like basis for a distinction is apparent in the case of Kauffman *v.* Machin Shirt Co., 167 Cal. 506 (140 Pac. 15). In that case, when the decedent, who was operating the elevator, reached the fourth floor he found the door from the elevator partly open, so that the fact that the door was open would not have indicated that the elevator would remain at that place until he returned. Again, "There is no statement that he looked, or that, if he had looked, there was any physical reason why he could not have seen that the elevator had been moved."

In Smith *v.* VanSciver, 58 N. J. L. 190 (33 Atl. 390), the plaintiff was using an elevator in construction work, and it does not appear that it had a door of any kind, or that the place where the elevator was located was not supplied with sufficient light, or that the plaintiff took any precaution whatsoever for his safety. He simply "walked backward hurriedly along the plank and into the elevator shaft."

In Danuser *v.* Seller, 24 Wash. 565 (64 Pac. 783), the plaintiff had placed one box on the elevator when another person requested to use it. The plaintiff told the other that he could not have it and then proceeded with his work by going to the sidewalk and getting another box and backing with it towards the elevator, when, the elevator having been removed, he fell into the shaft. It was the habit of employees, instead of ringing for the elevator, to pull it upward and downward by a rope, each employee accommodating himself. This custom was known to the plaintiff. The court said that the very fact that another person had demanded

the elevator, although the plaintiff told him that he could not have it, was sufficient to put the plaintiff on his guard in this respect. The plaintiff there did not look to see if the elevator was in place, and was not deceived by the appearance of things, as the jury might have found to be true as to the present plaintiff.

In Browne v. Siegel, 191 Ill. 226 (60 N. E. 815), the evidence showed that the decedent knew that other workmen used the elevator and that it had frequently happened that, when the workmen of his class would be ready to descend, the elevator would be out of place and would have to be brought up or down as the case might be.

In Perras v. Booth, 82 Minn. 191 (84 N. W. 739, 85 N. W. 179), the court stated that if there had been a custom for other employees to remove the elevator when decedent was using it, and the decedent knew of such custom, he would have assumed the dangers incident to such removal; but such were not the facts of the case, and upon the evidence adduced the court held that a jury question was presented. The facts of that case as proved were very similar to those of the case at bar.

In the case of Patterson v. Hemenway, 148 Mass. 94 (19 N. E. 15, 12 Am. St. R. 523), the plaintiff himself carried the elevator to the top floor, when he got out and *closed* the door behind him. He knew that any one below wishing to use the elevator would be at liberty to do so. In five minutes he returned and went back to the door and *opened* it, but, upon hearing some one speak to him, turned around quickly towards the speaker, and then, without looking at the elevator shaft, stepped into it, the elevator having been removed in the meantime. The plaintiff could not have been misled by an open door, because he had not left it open.

In Ballou v. Collamore, 160 Mass. 246 (35 N. E. 463), the plaintiff was a delivery boy and had entered the elevator of an apartment hotel to deliver goods to several tenants upon different floors. The elevator was composed of an upper and a lower compartment, the one for passengers and the other for freight. The plaintiff stepped out of the elevator at one floor and the door to the elevator was left open. He soon returned, and, assuming that the elevator was waiting at that place, stepped through the door and into the open shaft, the elevator having been removed in the meantime by the regular operator. There was a passenger upon the elevator at the time the plaintiff went up, and nothing was said between the

plaintiff and the elevator boy about waiting for him. The plaintiff did not look to see if the elevator had been moved, and the court thought there was no reason for him to expect that it would be waiting. In that case the court distinguished its own earlier case of Carey v. Arlington Mills, 148 Mass. 338, in which the facts were as follows: "A boy about fifteen years old was injured while employed at night in a mill by falling into the well of a freight elevator. At the trial of an action to recover for such injuries, there was evidence that the well was guarded by hatches, self-closing as the elevator passed up and down; that the well was so lighted from a room adjoining it that the floor formed over the well by the closed hatches, or the well itself if they were open, could be seen but a short distance from within the room, and that, if the elevator was at that floor, only the front of its platform could be seen; that he knew how the hatches worked, but did not know that they were not in working order at the time; that, as he approached the entrance to the well from that room as usual with a loaded truck to use the elevator, he saw one of the hatches standing up against the wall of the well, and knew that they were open, and inferred from this that the elevator was at that floor; and that, thinking that the platform might be slightly raised above the floor, as sometimes it was, he pushed the truck through the entrance on the run, and, the elevator being at the floor above, he fell and was injured." The ruling in that case was that the evidence would have authorized a finding that the boy was in the exercise of due care. That case resembles the case at bar, and, like Perras v. Booth, supra, is persuasive authority in favor of the right of the present plaintiff to go to the jury. It is our conclusion that the evidence would have authorized a finding for the plaintiff, and, therefore, that the court erred in awarding the nonsuit.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*