**NIEDERLEHNER, Gdn., Appellee v. WEATHERLY et, Appellees; MARY PEELS, Appellant.**

Ohio Appeals, First District, Hamilton County.

Nos. 6231 and 6235.   Decided April 12, 1943.

Mr. Arthur C. Fricke, Cincinnati, for Ruth Niederlehner, guardian.

Mr. George Metzger, Cincinnati, and Mr. Alfred C. Klein, Cincinnati, for Senora Wilson.

Mr. Clark Wilby, Cincinnati, and Mr. Mitchell Wilby, Cincinnati, for Mary Peels.

Mr. Lorenz Lemper, Cincinnati, and Mr. Gerrit Raidt, Cincinnati, for Charles Schaub.

## OPINION

By ROSS, P. J.

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County. The plaintiff, guardian of David Mitchell, a lunatic, instituted an action in replevin against the Chief of Police of the city of Cincinnati, to secure certain specific currency totaling $6,190. The sheriff of Hamilton County took possession of the money under the writ of replevin.

Three other claimants to the money intervened in the action and filed cross-petitions. The defendant, Chief of Police, filed an affidavit of interpleader, disclaiming any interest in the money. An entry of interpleader was made, the effect of which was to place all claimants including the plaintiff upon an equal basis. This required each one to sustain his claim by a preponderance of the evidence over the claims of the others. In the event no claimant was so successful the money should have been returned to the Chief of Police, the **original defendant**, having lawful custody of the money.

**Section 4398 GC**, provides:

"Stolen or other property recovered by members of the police force shall be deposited and kept in a place designated by the mayor. Each such article shall be entered in a book, kept for that purpose with the name of the owner, if ascertained, and the person from whom taken, the place where found with general circumstances, the date of its receipt and the name of the officer receiving it."

**Section 4400 GC**, provides:

"If within thirty days such money or property is claimed by any other person it shall be retained by such custodian until after the discharge or conviction of the person from whom taken and so long as it may be required as evidence in any case in court. If such claimant establishes to the satisfaction of the police judge that he is the rightful owner, it shall be restored to him, otherwise, it shall be returned to the accused person, personally, and not to any attorney, agent, factor, or clerk of such accused person, except upon special order of the mayor after all liens and claims in favor of the municipality, against it have first been discharged and satisfied."

The money consisted of old large type bills of five, ten, and twenty dollar denominations. There were no one dollar bills. The large type bills were withdrawn from circulation in 1929. Some gold certificates appeared among the bills and these were exchanged for other currency.

The court being unable to determine from the evidence that any claimant other than the plaintiff had introduced

substantial credible proof sustaining his or her claim to the money, ordered it turned over to the plaintiff, guardian of ▮ Mitchell under the mistaken conception that **no** burden rested upon the plaintiff to sustain her claim to the fund. See: **35 O. Jur., 564.**

The plaintiff was **not defendant** in the original action, nor was she in the position of defendant under the entry of inter-pleader. The entry of interpleader should not have been made for the Chief of Police had a definite right to custody of the money against all claimants who were unable to prove right to possession by substantial credible evidence, such as was **not** found to exist as to **any** claimant by the trial court.

Appeals have been taken from the final order disposing of the money by three of the claimants, who will be identified later.

The trial in this case lasted nine days. The bill of exceptions covers almost 1000 pages. The exhibits are numerous. Counsel have been industrious and thorough in aiding the court in its study of the case, and are entitled to more than a dogmatic statement of its conclusions. However, it must be apparent that no opinion confined to any reasonable limit could discuss this evidence with any degree of detail. The statement of the facts involved must therefore be confined to those pertinent facts which the court deems controlling of the issues presented.

Much of the evidence deals with fantastic claims which the trial court properly ignored. The evidence of the principal witness Mitchell aside from the fact that he is under guardianship as a lunatic and was only recently discharged from Lima State Hospital for the Insane is so discredited by his extra judicial statements as to have absolutely no value except to prejudice the claim of the plaintiff.

The pertinent facts are that David Mitchell the ward of the plaintiff had been confined in Lima State Hospital for the Insane for some time previous to May 13, 1940, when he escaped therefrom. He was arrested by Cincinnati police officers on May 23, 1940, at 3:30, A. M., at the corner of Eighth and John Streets in the city of Cincinnati. The arrest was made because Mitchell tallied with a description which the police had of him, obtained from the hospital. He was taken to the police station and searched. On the person of Mitchell were found "old large type bills" in denominations of five, ten, and twenty dollars, totaling the sum of $6,190. Concerning these facts there can be no question.

160

On being questioned as to where he had obtained the money, he stated he found it on Lock Street. He was taken to Lock Street and he indicated a vacant lot, pointing to a spot near a brick building. He claimed he had obtained the money from a small hole in the brick wall, but excavation by the officers failed to disclose any place where the money could have been concealed. He then said he had obtained the money from a house on Front Street, to which place he in company with the police proceeded. He pointed to various holes in several rooms and finally to one hole in particular which, upon examinatin, showed that it had not been touched for some time. Mitchell's claim was that he had obtained the money the same night as his arrest. This house on Front Street is located near the Ohio River and is frequently submerged by floods. The money showed no signs of ever having been wet. These latter facts cannot be disputed.

Mitchell was returned to Lima State Hospital later in the day of his arrest, May 23, 1940. While there, he made a new statement that he had entered a house at 422 Lock Street and found the money there. This was substantially his evidence at the trial.

The house on Front Street belongs to the claimant, Senora Wilson, the house on Lock Street belongs to Charles Schaub, each a claimant appellant.

Shortly after the account describing Mitchell's arrest and the finding of the money on his person, appeared in the newspapers, Mary Peels, another claimant appellant, appeared and claimed that she had hidden the money in the Front Street house. She lived some four miles away from the spot. Both the Front Street and the Lock Street house were untenanted and easily accessible to marauders, trespassers and thieves. Each was in a dilapidated condition.

Charles Schaub, owner of the Lock Street premises claims he had hidden the money in the Lock Street house. Some of his effects were still in it, but his residence for some time before had been many miles away. No one was left in charge of the premises.

Senora Wilson, owner of the Front Street house claims title to the money simply by virtue of her ownership of the Front Street premises, and Mitchell's extra-judicial statements.

First as to the claim of plaintiff:

This evidence shows that Mitchell, least of all the claimants is entitled to this money. His testimony at the trial probably has a preference over his statements made else-

where. From all of these, however, it appears he is a self-confessed thief, who entered the premises of another and took therefrom that which was not his. To talk of his "finding" the money under the circumstances is just pure twaddle.

As admissions precluding him or his guardian from advancing claims in his interest, of course, statements made upon the witness stand are conclusive.

According to Mitchell's own evidence he escaped from Lima State Hospital for the Insane for the express purpose of coming to Cincinnati, entering premises which he knew were the property of another, taking the money therefrom and converting it to his own use. Assuredly, no one could seriously claim he had any right to do this, or that he had the slightest claim of any nature upon this money. Yet, if he is to be believed he did exactly what he purposed to do. In fact, he states he obtained information as to the money from a fellow inmate (who has never been identified or located) and had a map showing the location of the money. Again, if he is to be believed he was a trespasser at least, if not subject to a charge of breaking and entering. He is certainly guilty of larceny, and if his mental condition permitted could be prosecuted for the same. To say he "found" this money is just to close the eyes to facts.

In **Keesecker, a Minor, v G. M. McKelvey Co., 141 Oh St 162,** it is stated at page 166 of the opinion that:

"A 'trespasser' may be defined as one who unauthorizedly goes upon the private premises of another without invitation or inducement, express or implied, but purely for his own purposes or convenience; and where no mutuality of interest exists between him and the owner or occupant. Heller v New York, N. H. & H. Rd. Co. (C. C. A. 2), 265 F., 192, 194, 17 A. L. R., 823."

That a trespasser can obtain no right to possession of property unlawfully removed from the premises of another, see: Gratz v McKee et, 270 Fed. 713, 23 A. L. R., 1393; Mitchell v Oklahoma Cotton Growers' Assn., 108 Okla. 200, 41 A. L. R., 1011.

In this connection, it is to be borne in mind that here is being discussed only the effect of Mitchell's evidence upon the claim of his guardian in his behalf, either as to her claim as plaintiff in the original action or a joint claimant under the entry of interpleader.

In **39 O. Jur., page 819,** it is stated:

"When a party testifies to positive and definite facts which, if true, would defeat his right to recover or conclusively show his liability, and such statements are not subsequently modified or explained by him so as to show that he was mistaken, although testifying in good faith, it has generally been held that he is conclusively bound by his own testimony, and cannot successfully complain if he is nonsuited or the court directs a verdict against him."

In **Hodges v Ettinger et, 127 Oh St 460,** at page 462, it is stated:

"The testimony of a party to an action necessarily subversive to his interests in the particular action is regarded in all courts as conclusive."

Now, as to the other claimants: Wilson and Schaub, owners of the Front Street and Lock Street properties: They too, are dependent upon Mitchell's evidence to show right to possession. They must depend upon one or the other of his statements to locate the money in a place which would show they were lawfully entitled to possession. This court is not called to go further than to demonstrate that the trial court was in error in awarding the money to the guardian by way of default in the evidence of other claimants. This has been done. It is not inappropriate, however, to say by way of comment that each of the claimants, including the plaintiff are compelled to resort to Mitchell's extra-judicial statements or evidence in order to sustain his or her claim. These statements are in such hopeless conflict, the mental condition of the witness is such, that no trier of facts would be justified in merely speculating as to which statement may be true. Mitchell, when arrested, first located the money in a **vacant** lot on Lock Street. Why should he have not then said he found it in the Lock Street house, or in the Front Street house? Then he located it on Front Street. Then back again, at the trial, to the house on Lock Street. Would the trier of facts be justified in any case involving merely a contest between the owners of the

two pieces of property in concluding that the witness told the truth at any particular time? His statements on the stand are fully impeached by his extra-judicial statements and then in turn are rendered completely valueless for any purpose except admission against his own claim.

Charles Schaub, Senora Wilson, and Mary Peels, who claims she hid the money in the Front Street house, are all dependent on the evidence of this unbelievable witness. How could a court decide between them?

There is no suggestion that either Mary Peels or Charles Schaub are insane. Only such a mental state in these persons would warrant a trier of facts in concluding that the former went four miles from her residence, selected a ramshackle, tumbled down house, in the flood district, one that was open to any casual trespasser who saw fit to enter—and hid more than $6,000 in currency in an **open** hole in the wall of one of the rooms.

And only patent insanity would prompt the owner of substantial assets, possessing sizeable funds in bank, to place a substantial part of the same currency in an old dresser, in a dilapidated house, which was found to be a fire menace by the city authorities, the rest in an old overcoat pocket hanging in a closet in such house, which like the Front Street property was open to marauders, and then take up his residence many miles away, never visiting the premises to ascertain the safety of his hoard.

Yet Mary Peels and Charles Schaub seriously advance their claims in the face of inferences which manifestly mark their evidence as merely fantastic fiction.

Had the trial court permitted the money to remain in the possession of the police department of Cincinnati, subject to proof of right to possession by the true owner, thus followed the statutes hereinbefore noted, that judgment would not have been disturbed. Such a conclusion is indicated by the state of the record.

The judgment of the Court of Common Pleas of Hamilton County is reversed, for the reason that it is against the weight of the evidence, and the case is remanded for a new trial and such further proceedings as may be according to law.

HILDEBRANT and MATTHEWS, JJ., concur.