## 30610. SPRAGUE v. ATLANTA BILTMORE HOTEL COMPANY.

DECIDED NOVEMBER 17, 1944. REHEARING DENIED DECEMBER 12, 1944.

*Blair & Carmichael, MacDougald, Troutman & Arkwright, Harllee Branch Jr., Dudley Cook,* for plaintiff.

*Smith, Smith & Bloodworth, Croom Partridge,* for defendant.

SUTTON, P. J. (After stating the foregoing facts.) The plaintiff contends that her husband's death was caused by the defendant's negligence as alleged in the petition, and that the court erred in dismissing her action. Briefly, the defendant contends that it appears from the allegations of the petition that the death of the plaintiff's husband was directly caused by his failure to exercise ordinary care for his own safety, and that the general demurrer was properly sustained. The plaintiff's husband was a registered guest of the defendant's hotel at the time of his death and had been assigned a room on the eighth floor of the hotel building. He received injuries which resulted in his death in attempting

to use one of the elevators to go from his room on the eighth floor to the lobby floor of the hotel.

It appears from the petition that, about midnight of January 12, 1943, the deceased was on the lobby floor of the hotel and desired to go to his room on the eighth floor to get his coat and hat and the coat and hat of a friend; that he and his friend went to the elevator corridor where he found an elevator, which was unattended, standing at said floor level with its door open, lights burning, with electric-power switch connected and unlocked, and that this was the only elevator available for use on the lobby floor of the hotel at that time; that on frequent occasions before that time the elevator in question and other passenger elevators of the same kind in the hotel had been entered and operated to upper floors by persons other than elevator operators, and that this fact was known to the defendant and its employees at the time the elevator in question was left open, lighted, unattended, and ready for use at the time in question—all of which it is alleged constituted an invitation to the plaintiff's husband and other persons lawfully on the defendant's premises to enter and operate said elevator; that the deceased being familiar with the operation of self-serving elevators, entered and operated it in going to the eighth floor of the hotel where his room was located; that he left the elevator at the eighth floor with the door partly open (approximately six inches), so that it could be used by him in returning to the lobby floor of the hotel; that he went to his room and within four or five minutes after leaving the elevator on the eighth floor with the door slightly ajar, he returned from his room to the elevator and observing that the door was still ajar as he had left it, and assuming, as he had a right to do, that the elevator had not been moved, he placed his hand upon the door, and pushing against it as he moved across the threshold, stepped forward with the intention of again entering the elevator, but the same had been moved by one of the defendant's agents or employees from the eighth floor without warning or notice to him and without closing the door, and, as a consequence, her husband in the emergency thus created lost his balance, and fell down the elevator shaft a distance of eight floors, thereby receiving the injuries that caused his death.

The elevator standing at the lobby floor of the hotel with its

door open and lights burning may have been an invitation to the deceased to enter; but it was not an invitation to him to operate the elevator. It is not alleged that guests of the hotel or persons other than elevator operators had, prior to the time in question, operated elevators of the hotel with the knowledge and consent of the hotel company or by its permission. It is alleged that the elevators were maintained and *operated* by the defendant for the transportation of its guests, patrons, and other persons to and from the upper floors of the hotel building. The allegation that "on frequent occasions prior to the injury and death of her husband the elevator in question and other passenger elevators of the same kind in the hotel had been entered and operated to upper floors by persons other than elevator operators, and that this fact was known to the defendant and its employees at the time the elevator in question was left open, lighted, unattended, and with electric-power switch connected and unlocked," is not sufficient to show an invitation to the deceased as a guest of the hotel to operate the elevator, which was neither an automatic nor a self-service elevator. The deceased without authority, so far as disclosed by the petition, operated the elevator to the eighth floor of the building and left it there with the door partly open, so that he could again operate it back to the lobby floor, and, within four or five minutes thereafter, in attempting to so use the elevator again, he pushed the door open, and, without making any effort to ascertain whether the elevator was present, stepped into the open elevator shaft and to his death. It is alleged that the door to the elevator shaft was of solid material through which it was impossible for a person on the outside to see into the elevator shaft, and that the narrow opening between the door jamb and the edge of the door in the partially open position in which it had been left by the plaintiff's husband did not afford sufficient view of the inside of the elevator shaft to enable him to detect that the elevator had been moved. But it is also alleged that the lights in the elevator were burning when he entered and operated it to the eighth floor, and, nothing to the contrary appearing, it must be taken that the lights were still burning when he left the elevator "parked" on the eighth floor. Lights burning in an elevator compartment would disclose such compartment to a normal person even though vision thereto could be had through an opening only six inches wide. It appears

from the petition that the deceased was a young man of travel experience and business ability, that he was in good health and was accustomed to using elevators; and, under the facts alleged, it would be unreasonable to say that acting as an ordinarily prudent person he would not have been able to detect the absence of the elevator compartment when he undertook to re-enter it on the eighth floor for the purpose of operating it back to the lobby floor of the hotel. But assuming that he turned off the lights in the elevator compartment when he left it on the eighth floor and that upon returning he approached a solid door through which he could not see, and the narrow opening which he had left in the door did not afford sufficient view of the shaft for him to detect that the elevator had been moved, was it the act of a prudent person in the exercise of ordinary care to push the door open and step into the dark elevator shaft on the eighth floor of the building without taking any precaution whatever to ascertain whether the elevator was present? Clearly, we think it was not. We think it appears affirmatively from the allegations of the petition that the deceased, by the exercise of ordinary care, could have avoided the injury complained of, and that the petition fails to set out a cause of action. The Code, § 105-603, provides: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover." Of course, we are cognizant of the well-settled rule that questions of diligence and negligence, including contributory negligence and proximate cause, are questions peculiarly for the jury, and this court will decline to solve them on demurrer, except in plain and indisputable cases. But where it clearly appears from the petition that the negligence charged against the defendant was not the proximate and effective cause of the injury, the court, upon general demurrer, may, as a matter of law, so determine. It was said in *Central of Georgia Ry. Co.* v. *Larsen*, 19 *Ga. App.* 413, 418 (91 S. E. 517): "Ordinarily the question of negligence, both on the part of the plaintiff and the defendant, is an issue to be determined by the jury, but where the plaintiff's petition shows on its face that he has no right to recover, and this question is raised by general demurrer, it is the duty of the court to sustain the demurrer and dismiss the petition." The cases of *Peniston* v. *Newnan Hospital*, 40 *Ga. App.* 367 (149 S. E. 715), and *Macon Savings*

*Bank* v. *Geoghegan,* 48 *Ga. App.* 1 (171 S. E. 853), are quite similar to the present case, and the principles there ruled are applicable to and controlling in this case. In each of those cases there is an allegation that the defendant was negligent in not having the elevator equipped with a mechanical device which would prevent its operation with the door or doors open. The petition in this case goes further and alleges that the violation of several city ordinances, in connection with the alleged acts of ordinary negligence, was the proximate cause of the injury complained of. But in construing the petition on demurrer, the plaintiff is in no better position by reason of the defendant's negligence in violating a city ordinance than she would be by reason of the violation of a common-law duty. The only advantage she would have from the former would be in the method of establishing the negligence by proof. So far as substantive law is concerned the negligence and its consequences are the same in both instances.

The case of *Camp.* v. *Curry-Arrington Co.,* 41 *Ga. App.* 53 (151 S. E. 837), is cited and relied on by the plaintiff in error. It will be seen from an examination of that case that it is distinguishable on its facts from the present case. In the *Camp* case the plaintiff and one Adams had gone to the defendant's store building to deliver ice. They had the authority and permission of the defendant to use its elevator in delivering ice as the plaintiff was attempting to use it when he was injured, and, in fact, he was expected to be using the elevator at the particular time in question. The employees of the ice company for which the plaintiff and Adams worked had been accustomed for a number of years to use the elevator in delivering ice to the defendant in the basement of its store building. Adams had just gone in the defendant's building and ascertained from some employee of the defendant the quantity of ice wanted and had placed the elevator at the first floor of the building. He informed the plaintiff the elevator was ready, and the plaintiff and Adams proceeded to take the block of ice from their truck to the elevator, and not more than three minutes had elapsed between the time of placing the elevator at the first floor by Adams and the time when the plaintiff, in undertaking to place the ice in the elevator, stepped through the open door into the elevator shaft and fell to the basement. The defendant in this short interval, without notice to Adams or the plaintiff,

had moved the elevator to another floor, and had left the door to the elevator shaft open where Adams had just placed the elevator. Under the facts in that case, the court held that it was a question for the jury to determine whether the plaintiff's injury was caused by negligence on the part of the defendant, or whether the injury complained of was due to the failure on the part of the plaintiff to exercise ordinary care.

Without going into detail, an examination of the cases of *Morris* v. *Deraney,* 68 *Ga. App.* 308 (22 S. E. 2d, 860), and *Southeastern Elevator Co.* v. *Phelps,* 70 *Ga. App.* 331 (28 S. E. 2d, 85), will show that these cases are distinguishable on their facts from the case at bar and that they do not authorize or require a different ruling in this case from that herein made.

Under the facts alleged the deceased had no right or authority to operate the defendant's elevator or to use it as he was attempting to do when he received the injury that resulted in his death, and consequently it can not be said that it reasonably appeared to him as a guest of the hotel that an invitation was extended to him to enter and operate the elevator. We have given due consideration to the case of *Georgia Power Co.* v. *Sheals,* 58 *Ga. App.* 730 (199 S. E. 582), and the cases therein cited, upon which the plaintiff in error strongly relies, but we are of the opinion that the principles ruled in those cases are not applicable to the facts of the present case.

The petition failed to show a right on the part of the plaintiff to recover, and the court did not err in sustaining the demurrer and dismissing the action.

*Judgment affirmed. Parker, J., concurs.*

FELTON, J., concurring specially. I concur in the opinion and judgment because of the rulings in the cases of *Peniston* v. *Newnan Hospital* and *Macon Savings Bank* v. *Geoghegan,* cited in the opinion.