the appropriate provisions of 'The Bail Reform Act' * * *." [13]

The judgment of the district court denying appellant's petition for a writ of habeas corpus will be affirmed, but the case will be remanded to the district court for a hearing on bail under the Bail Reform Act of 1966.

**Staphan L. KOSERKOFF, Plaintiff-Appellee and Cross-Appellant,**

v.

**CHESAPEAKE & OHIO RAILWAY COMPANY, Defendant-Appellant and Cross-Appellee.**

**Nos. 19946, 20016.**

United States Court of Appeals, Sixth Circuit.

June 5, 1970.

Walter A. Kleinert, Detroit, Mich. (Robert A. Straub, Southfield, Mich., on the brief), for Chesapeake & Ohio Railroad.

Arthur Roth, Miami, Fla. (Victor G. Hanson and James Finn, Detroit, Mich., on the brief), for Koserkoff.

Before CELEBREZZE and COMBS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

The Chesapeake and Ohio Railway Company appeals from a judgment for $22,500 in favor of plaintiff, Staphan L. Koserkoff, entered upon a jury verdict in said amount. Appellant, the C & O, asserts that a verdict should have been

13. In view of his order of March 3d, we feel confident that even without our decision here, the judge of the District Court of the Virgin Islands, who was not the presiding judge at the hearing in the present case, would reach the same conclusion in future cases that we do here.

directed in its favor because the evidence disclosed that, as a matter of law, plaintiff was guilty of contributory negligence, and that such evidence was insufficient to permit a jury to find that the railroad was guilty of any negligence that was a proximate cause of plaintiff's injuries. Plaintiff's cross appeal charges that interest on his judgment should accrue from date of filing the complaint instead of from the date of judgment.

We reverse and remand for entry of judgment for defendant. The cross-appeal will be dismissed.

■ The allegedly tortious conduct of the railroad occurred at Toledo, Ohio, and the suit was commenced and tried in the United States District Court for the Eastern District of Michigan, Southern Division. The conflict of law rules of Michigan, the forum state, determines what substantive law will control. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 497, 61 S.Ct. 1020, 85 L. Ed. 1477 (1941); Glens Falls Ins. Co. v. Danville Motors, Inc., 333 F.2d 187, 191 (6th Cir. 1964). Michigan holds that the substantive law of Ohio, the place of the casualty, will be followed. Petrusha v. Korinek, 237 Mich. 583, 589, 213 N.W. 188 (1927).

On October 3, 1962, plaintiff Koserkoff, then 73 years old, was employed as a night porter or cook aboard the SS Schoelkopf, a vessel owned by the American Steamship Company. He had been so employed for several years. The Schoelkopf berthed at the C & O dock in Toledo, Ohio, at about 7:30 in the morning. Koserkoff was familiar with this dock, including the C & O crane which operated upon railroad tracks parallel to the docked ship. There was evidence that the crane was already in use in the unloading of the Schoelkopf. Members of the ship's crew, including plaintiff, were about to go ashore. A watchman, also a member of the crew, lowered a ladder over the side of the ship to the dock, a distance of about 12 feet. At least three members of the departing crew climbed down the ladder to the dock without incident. Two other members of the crew proceeded down the ladder but, because of the nearness of the C & O crane to the bottom of the ladder, stepped off the ladder on to the hopper of the crane and then jumped from there to the ground, a distance of some six or eight feet. The plaintiff followed his fellow crew members, climbing down the ladder, stepping on to the hopper of the crane, and then jumping to the ground. The plaintiff, however, was injured—he broke his heel—when he landed on the surface of the dock. Whatever conflict there may be in the evidence, it is clear that the presence of the crane at or near the foot of the ladder either necessitated or suggested the route taken by plaintiff and his fellow crew members. It is also a fair inference that the brittleness of his bones foreclosed the 73 year old plaintiff's successful imitation of the conduct of his younger companions.

This suit began as a maritime action by Koserkoff against American Steamship Company, wherein the complaint asserted a cause of action arising out of the Merchant Marine Act, 46 U.S.C. § 688 (The Jones Act). He charged that his injuries were brought about by the negligence of the owners of the boat in that:

"Defendant failed to provide a watch at the head of the ladder and failed to warn members of the crew * * * that the crane was in operation in the area.

"Defendant further failed to warn the operator of the crane that crew members, particularly the plaintiff, were leaving the vessel at the aforesaid time and place."

In its answer to the foregoing, the American Steamship Company charged defensively:

"That any accident or injury plaintiff may have sustained while in the employ of defendant was caused or contributed to by his own carelessness, inattention and negligence."

Stipulating with American Steamship Company, plaintiff later joined the ap-

pellant, Chesapeake and Ohio Railway Company, as a defendant. The amended complaint asserted a cause of action against appellant under the general admiralty and maritime law and under the common law. The negligence charged was substantially that charged to American Steamship Company, but also averred that the ladder used was owned by the C & O. The latter statement was not true.

A settlement was made, however, between plaintiff and the Steamship Company by the latter's payment to Koserkoff of $1,928 for maintenance and cure and $7,500 damages. A covenant not to sue was given to American Steamship Company by Koserkoff. The settlement agreement provided that plaintiff would not dismiss or settle his suit against the C & O without consent of the Steamship Company; that if plaintiff recovered more than $25,000, but less than $32,500, plaintiff was to pay to the Steamship Company the excess of his recovery over $25,000; that if his recovery exceeded $32,500, he was to pay the Steamship Company $7,500; that if his recovery was less than $25,000, plaintiff would not repay any part thereof to the Steamship Company. American Steamship Company was thereupon dismissed from the case.

■ The case was tried and submitted to the jury upon common law negligence. Under the law of Ohio, contributory negligence is a defense in bar, as it is under the law of Michigan.

■ Plaintiff was familiar with the C & O dock, his ship having docked there about a dozen times during each of several summers while he was employed on the ship. As, stated, three of the six crew members who used the ship's ladder had completed their trip to the dock. Koserkoff, however, observed that the two who immediately preceded him stepped from the ladder onto the crane and then jumped to the ground. It is clear that the nearness of the crane to the bottom of the ladder necessitated, or suggested, the route followed by plain-

tiff and two of his crew mates. Plaintiff testified that the C & O crane was standing still when he started down the ladder, was standing still when he was about three-quarters of the way down, and was standing still when he stepped onto the crane. He said there was no movement of the crane at the time he jumped. He said that when he was on the crane someone hollered "get off that hopper". He became frightened and jumped. He did not know who hollered at him and there was no evidence that any employee or agent of the C & O was the one who hollered to plaintiff. Plaintiff was not asked, nor did he give any testimony, that except for the shouted command he would have waited on the hopper until movement of the crane allowed him to go to the ground on the ladder, or otherwise than jumping. He said he was frightened by the shouted command. Plaintiff gave an affirmative answer to the question, "Now * * * Mr. Koserkoff, when the ladder was lowered from the Schoelkopf down to the ground that crane was there, right there, standing still then wasn't it?"

We are of the view that the above testimony did not disclose that negligence of defendant could be found to have been a proximate cause of plaintiff's injuries. We believe also that it portrays that plaintiff's voluntary act in jumping from the crane was the immediate cause of his injuries, and that no negligence of defendant was the cause of his jumping. Before plaintiff had reached the place on the ladder from which he stepped onto the crane, he became aware that descent on the ladder to the dock itself could not be accomplished except by following the lead of the crew members who chose to jump from the crane without waiting for the crane to be moved out of the way. When plaintiff became aware of the situation, he had available to him two places of safety—one to remain on the ladder until the crane was moved away from it, or to remain on the crane, neither of which was shown to be a place of danger. His testimony was, however, that he heard someone holler to

get off the crane. Neither the original nor the amended complaint makes any claim that an exhortation to jump caused plaintiff to do so. There was no evidence that defendant was responsible for such shout. When testimony to this effect was given at the trial, objection was made to it and plaintiff's counsel very correctly observed:

> "But I don't think that [referring to the shouting] is the negligence, anyway. I think he is entitled to tell what he heard, what caused him to get off the crane."

Plaintiff's brief to this Court, however, takes the position that a jury could draw a legitimate inference that the shouted command must have come from the crane operator or some representative of the defendant. We find no circumstance from which such an inference could be legitimately drawn. No such claim was made by the pleadings. Plaintiff's counsel admitted that such shouting was no part of plaintiff's claim of defendant's negligence. We hold that this circumstance cannot be employed by plaintiff to make out a case of defendant's negligence or to ameliorate the clear fact that the activity which caused the injury to plaintiff was his own voluntary act.

Under his clear testimony, plaintiff, while on the ladder, had become aware that the position of the crane would not allow him to complete his trip to the dock on the ladder. At that time he could have chosen to wait until the crane had ceased to block his way. He could have remained on the ladder until the crane had cleared it, or he could have stepped on the box of the crane and there waited for the crane to move away from the ladder. If we may assume, which we do not, that the C & O was negligent in moving its crane to a position where it interfered with the use of the ladder as a way of egress from the ship, we are unable to find that such conduct was a proximate cause of the plaintiff's decision to adopt what proved to be a dangerous maneuver for him. Choosing not to wait at a place of safe-ty, his jump therefrom was his own voluntary act.

There was evidence that the C & O's crane had already begun unloading the boat. There may be a serious question whether the crane operator was required to make sure at every point along its track that no one would introduce a ship's ladder between the boat and the crane and to anticipate that members of the ship's crew would not wait for the crane to move out of the way before stepping off the ladder onto the crane and then jumping to the ground. There is no evidence that the crane operator was aware of the presence of the ladder. This is not a case of last clear chance.

■ It is familiar law that if a person voluntarily exposes himself to a danger, he may not cast responsibility upon another for the consequences of such act. If in this case the C & O could be found guilty of wrongdoing in placing its crane at a place which blocked the use of the ship's ladder as a way to the floor of the dock, such misconduct was quite apparent to plaintiff and his companions and had come to rest as a causative agent before their choice of alternative routes of egress.

The Ohio Supreme Court in Centrello v. Basky, 164 Ohio St. 41, 48, 128 N.E. 2d 80 (1955), quoted with approval the language of Weber v. Eaton, 82 U.S.App. D.C. 66, 160 F.2d 577, 578 (1947) as follows:

> "Contributory negligence and assumed risk are so closely related as sometimes to be almost, if not entirely, indistinguishable. In cases which do not arise between master and servant, the two terms may well be considered synonymous in the sense that *one who voluntarily places himself in a perilous position, when the potentional danger is apparent*, is not exercising ordinary care for his own safety." (Emphasis supplied.)

In Greyhound Lines v. Martin, 127 Ohio St. 499, 502, 189 N.E. 244, 245 (1934), the Ohio Court also said:

> "One cannot complain of the lack of warning of conditions involving dan-

ger to himself when he has as full knowledge of such conditions as if he had been apprised of them."

In Cadagan v. Great A. & P. Tea Co., 298 Mich. 207, 213, 298 N.W. 504, 507, (1941), the Michigan Supreme Court quoted approvingly from Stern v. Franklin, 290 Mich. 467, 287 N.W. 880 (1939), the following syllabus:

"One who voluntarily places himself in, or remains in, a position which he knows, or with reasonable care should know, is dangerous, cannot recover for ensuing injuries."

It may indeed be that we are here dealing with a case of pure accident. The real cause of his injuries was plaintiff's erroneous calculation that he could jump the same distance to the ground as had his companions. He failed to take into account his age and the likely brittleness of his bones. In Modzel v. Norwalk Truck Lines, 325 Mich. 693, 697, 39 N.W.2d 226, 228, (1949) the court charged contributory negligence to a plaintiff who,

"went into a place of obvious danger unnecessarily and without the proper regard that an ordinarily prudent man would have for his own safety."

Plaintiff properly asserts that in testing the evidence to resist a claim that a verdict should be directed, we must view the evidence in the light most favorable to the plaintiff, including whatever legitimate inferences may be drawn therefrom. He also contends that even if the plaintiff's own account of relevant events would exonerate defendant, there was other evidence—some of it contrary to plaintiff's own account—from which inferences of fact could be drawn that the C & O crane had struck the ladder, causing the plaintiff to fall to the ground. A witness, Povey, testified that he was a member of the crew of the Schoelkopf on the morning of the events here involved. He saw plaintiff start to climb down the ladder and his attention was then distracted, and

"Then I was leaning on the ladder with one arm, holding a suitcase on the other, and I felt a bump on the ladder, pretty strong bump."

He said he looked down and,

"I saw a man flying through the air. He was about two feet off the ground when I saw him."

Then, to this question, "You mean jumping or what?" he answered, "He didn't look like he was jumping. He was in a orthodox position." He said he did not know whether the crane hit the ladder or not. There is no other evidence suggesting that the bump he felt was not caused by plaintiff stepping off the ladder. He heard no one shout to plaintiff. It could also be inferred from Povey's testimony that the crane base, from the time he first saw it until it was stopped at the ladder, moved from aft forward about 30 feet. He answered the question whether the crane was moving at the time of plaintiff's descent, "If it was moving, it would be awful slow. I couldn't say for sure." Asked where the crane was when he felt the bump, he answered, "Right against the ladder, base of the ladder."

Plaintiff's daughter, Nancy Waxler, testified that at the time of her father's injury she was waiting on the C & O dock to pick him up. She was parked in her car about 50 feet sternward from the ladder. This is her critical testimony:

"Q. Did you see that crane move at any time while your father was on that ladder?

"A. Yes, I did.

"Q. Tell us what your father did. Tell us what you saw your father do, if anything, at the time.

"A. I seen my father coming down the ladder and he had his back to me. And the crane moved up right next, right in front of the ladder, and he come off the ladder onto the crane and jumped to the ground.

"Q. Do you know if the crane struck the ladder?

"A. I don't know.

"Q. Did you hear any shouting before your father jumped?

"A. No, I didn't hear anything.

\* \* \* \* \* \*

"Q. Mrs. Waxler, did you see anyone on the crane with your father?

"A. No.

"Q. There were no two men that jumped just before your father?

"A. I didn't see that. I wasn't looking in that direction at the time."

Plaintiff argues that testimony of Povey and Nancy Waxler, allegedly contrary to plaintiff's account of what happened, would permit the jury to find that the crane struck the ladder and caused plaintiff to be thrown to the ground or caused him to jump on to the crane. Defendant argues in opposition that plaintiff's own testimony should be looked upon as a judicial admission allowing for no departure from its clear meaning.

We, however, will not use this case to attempt elucidation as to when it is appropriate to use the rule of judicial admissions to dispose of a lawsuit. The text of 32A C.J.S. "Evidence" suggests our not employing it here.

"The extent to which a party is concluded by his own testimony adverse to his contentions in the litigation has been characterized as one of the most troublesome questions in the law of evidence." 32A C.J.S. p. 776.

The difficulty in articulating any generally applicable rule is portrayed by these Ohio cases: Gates v. Dills, 13 Ohio App.2d 163, 168, 234 N.E.2d 604 (1967); cf. Niederlehner v. Weatherly, 73 Ohio App. 33, 39, 54 N.E.2d 312 (1943); Hodges v. Ettinger, 127 Ohio St. 460, 462, 189 N.E. 113 (1934); and these Michigan cases: Tozer v. Kerr, 342 Mich. 136, 69 N.W.2d 171 (1955); Ortega v. Lenderink, 382 Mich. 218, 222–224, 169 N.W.2d 470 (1969); cf. Connor v. Lake Shore & M. S. R. Co., 168 Mich. 29, 133 N.W. 1003 (1911).

We do not employ the rule here. See discussion of Ortega v. Lenderink, 382 Mich. 218, 222, 223, 169 N.W.2d 470 (1969). We are, however, persuaded that neither the testimony of the witness Povey nor that of the plaintiff's daughter, either directly or by inference qualify or explain away the clear testimony of the plaintiff himself. The following is a generally applicable rule:

"It is also to be noted in this connection that plaintiff alone testified as to the presence of ice on these hose couplers and as to the manner in which the accident is alleged to have happened. Such of his statements and testimony as is against his interest is presumed to be true and in these circumstances the rule as to directing a verdict may be stated as follows: Where a party's own testimony, if true, would defeat his right to a verdict, and such statements are not modified or explained, a verdict may be directed against him." (citations omitted) Barnett v. Terminal Railroad Ass'n of St. Louis, 228 F.2d 756, 761 (8th Cir. 1956).

In Stein v. General Necessities Corp., 232 Mich. 322, 329, 205 N.W. 104 (1925), the Michigan Court stated the rule we should apply here.

"While contradictory statements of a plaintiff may go to a jury for a sifting to discover the truth (Goonen v. Ann Arbor R. R. Co., 218 Mich. 502, 188 N.W. 363), the rule is not sufficiently lax to admit a positive statement of fact establishing contributory negligence being rendered an affirmative showing of due care by subsequent testimony that the first statement may or may not be true." 232 Mich. at 329, 205 N.W. at 106.

That the distinguished District Judge was indeed troubled by the question we rule upon is portrayed by his observation, made during a discussion whether

plaintiff was entitled to have the case submitted to the jury as a maritime tort as well as on common law negligence.

"Here is the way I feel about it: If your position is that the crane was loading at the time that your client came down the ladder, then I would think I would have to find as a matter of law that the boat, itself, the watchman and your client were guilty of contributory negligence, because now you are telling us that that ladder was installed while the crane was unloading and that here's a man that came down right into position where he had to get off the ladder and get on the crane and then jump up from there to get down onto the ground."

The judgment of the District Court is reversed and the cause remanded for entry of judgment for the defendant railroad, dismissing plaintiff's complaint.