[No. 19403.  Department One.  December 7, 1925.]

## SAM V. ALLINGHAM, *Appellant,* v. LONG-BELL LUMBER COMPANY, *Respondent.*[1]

INNKEEPERS (2)—INJURY TO GUEST FROM DANGEROUS PREMISES—CONTRIBUTORY NEGLIGENCE. A guest at a bunkhouse is not, as a matter of law, guilty of contributory negligence, in falling into an open ditch while cautiously proceeding along a dark pathway towards the door nearest to his bed, there being no guard or warning of the ditch intersecting the pathway.

SAME (2). In such a case, contributory negligence is not shown by the fact that he did not, on returning, follow the same course as upon his outward journey, the door itself being an invitation to follow the pathway.

SAME (1)—WHO ARE GUESTS OR BOARDERS—DANGEROUS PREMISES—NEGLIGENCE. An employer, conducting a boarding and bunkhouse for employees, and accepting pay for lodgings from a prospective employee, is liable as an innkeeper for injury to a guest through negligence in maintaining dangerous premises.

TRIAL (63)—PROVINCE OF COURT AND JURY—JUDGMENT NON OBSTANTE. Judgment notwithstanding a verdict can be granted only where there is no evidence, nor reasonable inference from evidence, to justify the verdict.

Appeal from a judgment of the superior court for Cowlitz county, Kirby, J., entered March 16, 1925, in favor of the defendant notwithstanding the verdict of a jury for the plaintiff, in an action in tort. Reversed.

*W. H. Sibbald,* for appellant.

*Fisk & McCarthy,* for respondent.

[1]Reported in 241 Pac. 298.

ASKREN, J.—Plaintiff brought this action to recover for personal injuries. After verdict by the jury in plaintiff's favor, the court entered judgment for defendant notwithstanding the verdict, and plaintiff appeals.

The facts follow: Appellant, desiring to secure work with respondent corporation, went to what he describes as "The Long-Bell hotel or boarding house" of respondent, and paid for his board and bed for two nights. He was sent to the bunkhouse and assigned to bed known as No. 11. The bunkhouse of respondent is an oblong building, divided into two parts, the north side of which is known as "Bunkhouse A," and the south side, as "Bunkhouse B," both sides being practically identical. On the north side of bunkhouse "A" are three doors, and there is another door at the west end, and a corresponding door at the east end. At the east end of the building, there is a plank walk extending along the easterly end of the building, and which extends in a southeasterly direction from the east door of bunkhouse "B" to the toilet provided for persons using the bunkhouses.

Appellant had no knowledge of the physical conditions surrounding the bunkhouse, the bed to which he was assigned being in the westerly portion of bunkhouse "A," and west of the three doors. About 9 o'clock in the evening, desiring to retire, and inquiring where the toilet was, he was informed by some of the men in the bunkhouse that it was out back. Appellant walked the greater portion of the length of the bunkhouse and passed out the side door nearest the east end of the building. Upon arriving there, he found a path leading along the side of the building, which he followed to the easterly end of the building, and proceeded on his way to the toilet. Coming back, he passed the easterly end of the building; and, upon approaching the north side,

followed the path, intending to return to his bunk. When he arrived at the first door on the north side of the building, he noticed that the men whose bunks were near that door were retiring, and not desiring to bother them, proceeded along the path intending to go in at the door nearest his bunk. As he proceeded, he noticed there was some obstruction ahead, inasmuch as a light some distance away was partially obscured casting a shadow upon his path. He could not see the ground, nor could he see what the obstruction was. He proceeded very slowly, taking approximately ten-inch steps, until he arrived at a point between the second door and the one nearest his bunk when he fell into a ditch that had been dug that day for the purpose of putting in a heating plant, and received serious injuries.

The court held that appellant was guilty of contributory negligence, and respondent seeks to justify this ruling upon two grounds: (1) that there was a safe way in which to return from the toilet, and that appellant ignored it and chose the dangerous way; and (2), that, when appellant came along the side of the building unable to see, and knew there was some obstruction ahead, it was negligence for him to proceed.

We think it is clear from the testimony of appellant, which the jury had a right to believe, that he was proceeding on the pathway along the side of the building towards the door entering closest to his bed in a very cautious and careful manner. We do not think it can be said, as a matter of law, that, because one is unable to see what an obstruction is, that he is guilty of contributory negligence in proceeding. Appellant testified that he assumed that the obstruction was perhaps a pile of wood similar to one he had encountered on his way to the toilet. It can hardly be urged that appellant was bound to anticipate that the obstruction

was a pile of dirt upon the far side of an open ditch. It is common knowledge that an open ditch without any warning sign on it intersecting a pathway could not be other than a trap into which a most careful person might fall. It was for the jury to say, under all the evidence, whether he was proceeding as a reasonably prudent person would under the circumstances. *Merwin v. Spokane,* 135 Wash. 88, 236 Pac. 803.

The other question raised, that appellant, having proceeded upon his outward journey through the most easterly door on the north side, and finding that way safe, had no right to choose a different door for entrance upon his return. But appellant had no information to indicate to him that the path was unsafe. On his outward journey, he undoubtedly had the right to leave the building by any one of the side doors, the choosing of either of them not indicating that he thought the use of any of the others was unsafe. A door is in itself an invitation to proceed by the pathway leading therefrom.

But respondent urges that since it does not run a hotel as a regular business, and that the acceptance of appellant was merely incidental to its main business, it should not be held to the usual rule as between a hotel and guest; citing 32 C. J. p. 531:

"To constitute a person an innkeeper, hotel keeper, or tavern keeper he must receive and entertain as guests all those who choose to visit his house, the obligation to do so being one of the distinguishable characteristics of the business of keeping an inn. Another essential characteristic of keeping an inn is that it shall be the regular business of the person so engaged. A person is not an innkeeper who receives guests out of mere hospitality, or for motives among which gain is at most incidental, and not because he had regularly entered into the business of receiving guests."

But whatever distinction may be found between the rights and duties of those whose main business is that of running a hotel and those who accept guests for a consideration, as incidental to their main business, we think that no case can be found in which the owner of property has not been held liable for his guests falling into a trap such as the open trench across the pathway in this case proved to be.

We have often held that a court can grant judgment notwithstanding the verdict only in those cases where there is no evidence, nor reasonable inference from evidence, to justify the verdict: *Lydon v. Exchange National Bank*, 134 Wash. 188, 235 Pac. 27.

The judgment of the superior court is reversed, with instructions to pass upon respondent's motion for a new trial.

Tolman, C. J., Holcomb, Fullerton, and Main, JJ., concur.