[No. 29953. Department Two. February 25, 1947.]

ANDREW R. FISKAA et al., Appellants, v. M. P. MILLER et al., Respondents.[1]

Horrigan & Leavy and George Olson, for appellants.

Moulton & Powell and Thomas B. Gess, for respondents.

JEFFERS, J.—This action was commenced by Andrew Fiskaa and wife against C. Dayton Durochur and wife, M. P. Miller and wife, and John Doe Butterfield and wife, as owners and operators of the Commercial hotel, in Kennewick, Washington, to recover damages for personal injuries alleged to have been received by Andrew Fiskaa, on the morning of April 20, 1945, while he was a transient guest in the hotel.

It is alleged the injuries were caused by the negligence of defendants in maintaining off a lower hallway an unguarded open doorway at the top of a steep stairway leading to the basement, which lower hallway, stairway, basement, and open doorway were wholly unlighted. It is al-

[1]Reported in 177 P. (2d) 707.

leged that plaintiff Andrew Fiskaa, on the morning of April 20, 1945, in going from his room on the third floor of the hotel to the office, fell through this unguarded and open doorway and down the steps to the basement floor, receiving the injuries for which he seeks damages.

· Defendants, by their answer, denied the material allegations of the complaint and affirmatively alleged that, if plaintiff sustained any injury, the same was caused and contributed to by his own careless and negligent acts. The reply denied the affirmative matter set up in the answer.

The cause came on for trial on March 6, 1946, before the court and jury. Plaintiffs introduced testimony in support of the allegations of their complaint, and, at the close of plaintiffs' case, counsel for defendants made the following motion:

"Defendants at this time move the court for a non-suit and dismissal of plaintiffs' case on the ground there is not sufficient evidence of negligence on the part of defendants to take the case to the jury; and also on the further ground there is a definite showing of contributory negligence on the part of the plaintiff that bars his recovery as a matter of law."

It appears conclusively from the statement of facts that the above motion was granted on the sole ground that the court concluded, as a matter of law, that plaintiff Andrew Fiskaa was guilty of contributory negligence.

A judgment of dismissal was entered on April 1, 1946, from which plaintiffs have appealed. In this opinion, Andrew Fiskaa will be referred to as though he were the sole appellant.

It is assigned as error that the court erred in holding as a matter of law that appellant was guilty of contributory negligence, and in granting respondents' motion for nonsuit at the conclusion of appellant's case.

■ We again refer to the rule stated in *Billingsley v. Rovig-Temple Co.*, 16 Wn. (2d) 202, 133 P. (2d) 265, that:

"A challenge to the sufficiency of the evidence, a motion for nonsuit, a motion for a directed verdict, or a motion for judgment notwithstanding the verdict admits the truth

of the plaintiff's evidence and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the defendant, and in the light most favorable to the plaintiff."

Having in mind the above rule, let us examine the evidence to see whether or not the trial court was justified in holding as a matter of law that appellant was guilty of contributory negligence.

It is admitted that all during the month of April, 1945, Abbie Butterfield and M. P. Miller and wife were operating the Commercial hotel, in Kennewick, under a lease from C. Durochur and wife; that the hotel was operated as a public house, catering to transient guests; that a charge was made for the accommodations furnished.

Appellant, who was a traveling salesman, registered at the Commercial hotel on the evening before the accident and was assigned to a room on the third, or top, floor by Mrs. Butterfield, who gave appellant a key and told him to go to the top story and go back to the red light, turn to the right, and proceed down the hall to No. 43, which was the last room on the right. Mrs. Butterfield stated that those were all the directions she gave appellant. She further stated that appellant left a call for five o'clock the following morning and went up to his room around nine or ten p. m. No one took Mr. Fiskaa up to his room, but he found it from the directions given by Mrs. Butterfield.

Before appellant went up to his room, he noticed two swinging doors at the back part of the office and saw people going back and forth through those doors. Appellant had never stopped at the Commercial hotel before. Mrs. Butterfield pointed out to appellant the stairway which would take him to his room. The stairs he took going to his room were carpeted and lighted.

At about five o'clock on the morning of the accident, appellant was awakened by someone knocking on his door. He got up, dressed, and started down the hall for the office. He saw a stairway to his left and, not seeing any other, started down this stairway from the third to the second floor. There was no door at the top of this stairway, nor

was there any sign indicating it was not for use by the public generally. It was just like other stairways, except that it was not carpeted and not lighted, save as light came in from the landings. Appellant realized that these stairs were not the ones which he had used in going to his room the evening before, but, thinking they would take him to the office, he proceeded on down from the third to the second floor, and from the second to the first floor. It was dark when he got down to the first floor, and he could see nothing except a door straight ahead, with a curtain over it. There was a small light in that room, but it gave very little illumination out on the landing where appellant was. As stated, there was no light on any of the stairways. Appellant testified:

"Q. What did you do? A. Well, I tried my best to find my bearings and I thought of the door entering to the office would be a little bit to the right. Q. Which door to the office? A. The back part of the door leading into the office. I thought there was a door I was looking for. I knew there was a door in the back part of the office; I had seen people going through there and I thought maybe it was a short-cut as an entrance to that lobby. Q. What did you do in your search for that? A. Well, I was using my feet and hands at the same time, trying to feel my way. Q. And what were you feeling for? A. For the door. Q. Did you find one? A. No. Q. What happened? A. I fell down the stairs. . . . Q. What caused you to fall? A. Well, I was coming on the floor, feeling my way. I stepped off down through this stairway. Q. What caution were you using because it was dark? A. Well, I was walking slowly and feeling my way. Q. How many steps did you take before you fell in this opening? A. I imagine I hit the second or third step; I wouldn't say which one. Q. The second or third step of the stairs? I mean, how many steps did you take before you fell in the opening? I don't know exactly how far it is from the stairs to the basement opening. I don't know if it was ten feet or twelve feet, or what. Q. After you fell, what happened then? Where did you fall to? A. The basement floor."

The night clerk heard appellant and came from the office, turned on a light, and helped him up the steps.

Appellant testified he had no trouble going down the two flights of stairs, as there was a railing and he was holding on to that. He further testified that he did not knock on or attempt to open the door which was in front of him when he reached the main floor, as he thought it was a private room. Appellant's explanation of why he went down those stairs was that they were the first stairs he came to, about fifteen or twenty feet from his room, and he thought they would lead to the lobby.

On cross-examination, appellant repeated that it was very dark on the landing at the foot of the stairs, and that when he turned to the right he thought he was going to the office.

The trial court's theory of the question involved is shown by the following statement made just prior to its ruling:

"The court is convinced it is negligence as a matter of law for two reasons: It was negligence for him [appellant] not to go back the stairs that he came up, and he knew he was not. And again it was negligence when he got down near the bottom of the stairs from the second to the first and was entering total darkness, that he did not go back up those stairs and go on down the stairs he had come up."

To sustain his contention that the court erred in deciding as a matter of law that appellant was guilty of contributory negligence, appellant cites and relies upon the case of *Allingham v. Long-Bell Lbr. Co.,* 136 Wash. 681, 241 Pac. 298, and the rules therein announced. In the cited case, the court, after a verdict in plaintiff's favor, granted a motion for judgment notwithstanding the verdict. We quote at some length from the opinion, as we think the rules therein announced, with which we are in accord, require a reversal of the instant case.

"Appellant had no knowledge of the physical conditions surrounding the bunkhouse, the bed to which he was assigned being in the westerly portion of bunkhouse 'A,' and west of the three doors. About 9 o'clock in the evening, desiring to retire, and inquiring where the toilet was, he was informed by some of the men in the bunkhouse that it was out back. Appellant walked the greater portion of the length of the bunkhouse and passed out the side door nearest the east end of the buildings. Upon arriving there,

he found a path leading along the side of the building, which he followed to the easterly end of the building, and proceeded on his way to the toilet. Coming back, he passed the easterly end of the building; and, upon approaching the north side, followed the path, intending to return to his bunk. When he arrived at the first door on the north side of the building, he noticed that the men whose bunks were near that door were retiring, and not desiring to bother them, proceeded along the path intending to go in at the door nearest his bunk. As he proceeded, he noticed there was some obstruction ahead, inasmuch as a light some distance away was partially obscured casting a shadow upon his path. He could not see the ground, nor could he see what the obstruction was. He proceeded very slowly, taking approximately ten-inch steps, until he arrived at a point between the second door and the one nearest his bunk when he fell into a ditch that had been dug that day for the purpose of putting in a heating plant, and received serious injuries.

"The court held that appellant was guilty of contributory negligence, and respondent seeks to justify this ruling upon two grounds: (1) *that there was a safe way in which to return from the toilet,* and that appellant ignored it and chose the dangerous way; and (2), *that, when appellant came along the side of the building unable to see, and knew there was some obstruction ahead, it was negligence for him to proceed.*

"We think it is clear from the testimony of appellant, which the jury had a right to believe, that he was proceeding on the pathway along the side of the building towards the door entering closest to his bed in a very cautious and careful manner. We do not think it can be said, as a matter of law, that, because one is unable to see what an obstruction is, that he is guilty of contributory negligence in proceeding. Appellant testified that he assumed that the obstruction was perhaps a pile of wood similar to one he had encountered on his way to the toilet. It can hardly be urged that appellant was bound to anticipate that the obstruction was a pile of dirt upon the far side of an open ditch. It is common knowledge that an open ditch without any warning sign on it intersecting a pathway could not be other than a trap into which a most careful person might fall. It was for the jury to say, under all the evidence, whether he was proceeding as a reasonably prudent person would under the circumstances. *Merwin v. Spokane,* 135 Wash. 88, 236 Pac. 803.

"The other question raised, that appellant, having proceeded upon his outward journey through the most easterly door on the north side, and finding that way safe, had no right to choose a different door for entrance upon his return. But appellant had no information to indicate to him that the path was unsafe. On his outward journey, he undoubtedly had the right to leave the building by any one of the side doors, the choosing of either of them not indicating that he thought the use of any of the others was unsafe. A door is in itself an invitation to proceed by the pathway leading therefrom." (Italics ours.)

In 42 A. L. R., at p. 1101, under the general heading "Liability for injury to person on business premises, in consequence of passing through wrong doorway," the *Allingham* case is cited as illustrative of the prevailing rule.

We also call attention to the case of *Bender v. White*, 199 Wash. 510, 92 P. (2d) 268.

■ Respondents contend appellant was guilty of contributory negligence for the following reasons: (a) He chose a different course for his return to the lobby and did not follow the course provided for him, which was safe, well lighted, and carpeted; (b) when he reached the main floor in darkness, he proceeded without proper care; (c) darkness itself was a warning of danger and he disregarded it; (d) he did not make use of the light available from the doorway which was in front of him. These are practically the same contentions made in the *Allingham* case, *supra*.

We have read the cases from other jurisdictions cited by respondents and those cited from this state. Whatever the rule may be in other jurisdictions relative to the duty owed by a hotelkeeper to a guest, we are of the opinion the rules announced in the cases hereinbefore cited and quoted from are applicable to the facts in the instant case, and that, under those rules, it cannot be said in the instant case that appellant was guilty of contributory negligence as a matter of law.

We find no case from this jurisdiction cited by respondents, which, under facts such as appear in the instant case,

would compel a holding that appellant was guilty of contributory negligence as a matter of law.

While it is true that a general order sustaining respondents' motion was entered, it is apparent from the record that the court did not consider the question of whether or not respondents were guilty of negligence, but based its decision entirely upon its conclusion that appellant was guilty of contributory negligence as a matter of law, and therefore could not recover. In view of this condition of the record, we express no opinion as to the claimed negligence of respondents.

In view of the conclusion we have reached, the judgment of the trial court must be and it is reversed, and the cause is remanded with instructions to vacate the judgment of dismissal. It follows that a new trial must be granted, and it is so ordered.

MALLERY, C. J., STEINERT, ROBINSON, and HILL, JJ., concur.